896 F.Supp. 1385 (1995)
Jennifer GERMAN and Wellington German, infants by their Mother and Natural Guardian Ana Maritza GERMAN, and Ana Maritza German, Individually, Plaintiffs,
v.
FEDERAL HOME LOAN MORTGAGE CORP., Property Services Company, Caisi Management Company, Inc., 1710 Montgomery Realty Assoc., L.P., and Jerome Deutsch, Defendants.
No. 93 Civ. 6941 (RWS).
United States District Court, S.D. New York.
August 22, 1995.
*1386 *1387 *1388 *1389 Fitzgerald & Fitzgerald, P.C. Yonkers, NY (John M. Daly, Brian J. Farrell, John E. Fitzgerald, of counsel), and Bronx Legal Services New York City by Lucy Billings, Matthew J. Chachere, for plaintiffs.
Siff Rosen, P.C., New York City (William G. Ballaine, Thomas G. Merrill, John C. Morland, Lance Wolf, of counsel), for defendants Federal Home Loan Mortg. Corp. and Caisi Management Co., Inc. and Harold Beck d/b/a Tebec Management Co.
Wilson, Elser, Moskowitz, Edelman & Dicker, New York City (Paul J. Bottari, of counsel), for New York City Housing Authority.
Weinstein, Chayt & Chase, P.C., Brooklyn, NY (Irwin J. Weinstein, of counsel), for defendants 1710 Montgomery Realty Assoc., P.C., Property Services Co., Wittenstein, Wagman and Deutsch.
Paul A. Crotty, Corp. Counsel of the City of New York, New York City (Gabriel Taussig, Steven Levi, Lisa S.J. Yee, of counsel), for defendant City of New York.

OPINION
SWEET, District Judge.
Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") has moved for reargument of a portion of the May 8, 1995 opinion of this action (the "Opinion"), or in the alternative, for leave to appeal two issues to the Court of Appeals pursuant to 28 USC § 1292(b). Defendants 1710 Montgomery Realty Associates, L.P. ("1710") and partners Todd Wittenstein ("Wittenstein"), Alex Wagman ("Wagman"), and Jerome Deutsch ("Deutsch") (collectively the "1710 Defendants") have moved for clarification of the Opinion and to sever the action against them. Defendant the City of New York (the "City") has moved for reargument, or in the alternative to appeal, pursuant to 28 U.S.C. 1292(b), the issue of its liability, pursuant to 42 U.S.C. § 1983, under the Community Development Block Grant ("CDBG") program and the Lead Paint Poisoning Prevention Act (the "LPPPA"). Plaintiffs have moved to reargue the dismissal of their negligence per se claims. Hector Luis David, Marilyn Bernardez and Florentina David move to intervene as class plaintiffs.
For the reasons set forth below, Defendants Freddie Mac and New York City's motions are denied, the 1710 Defendants' motion is denied and Plaintiffs' motion to reargue, is granted and the motion to intervene is granted.

The Parties
The parties, facts and prior proceeding are fully described in earlier opinions of this court, familiarity with which is assumed. See German v. Federal Home Loan Mortgage Corp., 1994 WL 319154 (S.D.N.Y. June 28, 1994) (German I); German v. Federal Home Loan Mortgage Corp., 885 F.Supp. 537 (S.D.N.Y.1995) (German II or the "Opinion"). *1390 A review of those facts and prior proceedings relevant to this motion is presented below.
Freddie Mac allegedly was the owner of the Montgomery Building from December 1988 until October 31, 1991, and from May 8, 1992, until September 16, 1992.
The City owned and operated the Montgomery Building from October 31, 1991, until May 8, 1992. In addition, the City receives and administers federal funds to operate buildings under section 8 (42 U.S.C. § 1437f) and the Community Development Block Grant ("CDBG") program (42 U.S.C. § 5301). The complaint alleges that the City, as a Public Housing Authority ("PHA"), used federal funds in the German home to repair and rehabilitate as part of a Community Development Block Grant program.
Defendant 1710 Montgomery Realty Associates, L.P. ("1710") and partners Todd Wittenstein ("Wittenstein"), Alex Wagman ("Wagman"), and Jerome Deutsch ("Deutsch") allegedly have owned the Montgomery Building from September 16, 1992, until the present. 1710 has its principal office in Valley Stream, New York. Wittenstein and Deutsch reside in the City of New York. Wagman resides in Valley Stream, New York.
Defendant Freddie Mac allegedly owned the St. Nicholas Building until September 1, 1994.
NYCHA receives and administers Section 8 funds to property throughout New York City.

The Proposed Intervenors
Proposed intervening plaintiff Hector Luis David ("Hector Luis") was born on August 17, 1989, and has resided at 1670 Boston Road, Apartment 21-C, Bronx, New York (the "Boston Road building") since birth. He was diagnosed as lead poisoned on November 9, 1992.
Proposed intervening plaintiff Marilyn Bernardez ("Marilyn") was born on October 20, 1980, and has resided at the Boston Road building since January 16, 1984. Marilyn is currently 6 months pregnant. She was diagnosed in 1984 and in March of 1995 as lead poisoned.
Proposed intervening plaintiff Florentina David is the mother and natural guardian of plaintiffs Hector Luis and Marilyn. She has lived at the Boston Road building since January 1984 and brings this suit on behalf of herself, her children and Marilyn's fetus.
According to the Intervening Complaint, the Boston Road building is owned and operated by the City of New York. The City receives and uses federal Community Development Block Grant Funds for this property.

Facts and Prior Proceedings
This case was originally transferred to federal court from the State Court in New York on October 5, 1993.
Pursuant to a Summons with Notice and Verified Complaint dated July 26, 1993, the Germans instituted an action in Supreme Court, Bronx County, against PSC, CAISI, 1710, Freddie Mac, Deutsch, Wittenstein, and Wagman. The complaint sought damages for personal injuries to the infant Germans and sought relief for Ana German in her individual capacity as mother and natural guardian of the infant plaintiffs.
Pursuant to 28 U.S.C. § 1446(b), Freddie Mac, as an entity created by federal legislation, removed this action to this Court on October 5, 1993.
Argument was heard on a motion to amend the complaint on May 11, 1994. An opinion on that motion was issued on June 28, 1994, granting the plaintiffs' right to amend their complaint to include additional defendants and to supplement their claims. See German v. Federal Home Mortgage Corporation, 1994 WL 319154 (S.D.N.Y.).
On August 17, 1994, this Court denied the Goffin plaintiffs' request for an order blocking the sale of the building, (Proceedings, Aug. 17, 1994, at 20), and on August 22, 1994 the Goffins filed an intervening complaint in this action which sought individual and class relief.
As of September 1, 1994 Freddie Mac had sold the St. Nicholas Avenue property. As of November 1994, none of the defendants owned the building.
A Second Amended Complaint (the "Complaint") was filed on September 14, 1994 in *1391 which the plaintiffs sought class certification and an order requiring defendants to take steps necessary to protect their tenants from lead poisoning.
On September 29, 1994 the Germans and the Goffins filed a motion asking for class certification. Motions to dismiss and for partial summary judgment were also filed by all the defendants in September. Argument was heard on the motions on November 22, 1995.
On May 8, 1995 the Opinion was filed which resolved motions submitted by all parties. In sum, it granted in a modified form plaintiffs' motion to certify a class, granted defendants' motions to dismiss state claims based on theories of negligence per se, strict product liability, and liability for ultrahazardous substances. Defendants' motions to dismiss the other state causes of action were denied.
The plaintiffs requested certification for the following class and subclasses:
Class Warning and Notice
All persons residing on premises either owned, managed, or operated by any of the defendants or where they administer assistance payments under a federal housing program.
Sub-Class # 1: Medical Monitoring
All persons age 8 years and under and all women of child-bearing age (12-50 years old) residing in buildings owned, managed, or operated by defendants or where they administer assistance payments under a federal housing program.
Sub-Class # 2: Abatement
All persons age 8 years and under and all women of child-bearing age (12-50 years old) residing in buildings owned, managed, or operated by defendants or where they administer assistance payments under a federal housing program, and where there is lead-based paint in or on the dwelling or common area.
By opinion dated May 8, 1995, the Court granted the class certification motion, in a somewhat modified form. Specifically, the Court held that:
The classes certified will include "children under seven years old residing in buildings owned, managed, or operated by defendants or where they administer assistance payments under a federal housing program." While the Court agrees that as a practical matter, notice of the risks and signs of lead paint problems will need to be sent to all tenants to insure that those at risk of injury are notified, the class can only contain those at risk. The sub-class for Medical Monitoring will include the modification that there must be the risk of lead-based paint, consistent with the statutes, including the statutory presumptions. The remainder of the class definitions requested by plaintiffs will remain as requested by plaintiffs and as described herein.
German II, at 561.
In the final analysis, the class was certified as against the City as a PHA under the claims brought by the German plaintiffs and Freddie Mac as an owner and NYCHA as the PHA under the claims brought by the Goffin plaintiffs.
A motion to intervene the Franklin family as plaintiffs was filed on June 27, 1995 and has been pending sub judice since August 4, 1995 when the final papers were filed on the motion.

Discussion

I. The Davids' Motion to Intervene will be Granted

Legal Standard
The Intervenors presently before this Court seek to intervene pursuant to Rule 24(b)(2), Fed.R.Civ.P. The Rule provides that "[u]pon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common." The Rule is to be construed liberally, see Davis v. Smith, 431 F.Supp. 1206, 1209 (S.D.N.Y.1977), aff'd, 607 F.2d 535 (2d Cir.1978), and it does not require an identity of facts, see Swift v. Toia, 450 F.Supp. 983, 990 (S.D.N.Y.1978), Swift v. Blum, 598 F.2d 312 (2d Cir.1979), cert. denied, 444 U.S. 1025, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980).
*1392 Rule 24(b)(2) is satisfied when, "despite factual differences between the parties, a common question of law is involved." Davis, 431 F.Supp. at 1209; see Brooks v. Flagg Brothers, Inc., 63 F.R.D. 409, 412-14 (S.D.N.Y.1974). Ultimately, whether to allow a party to intervene is within the discretion of the district court. See United States Postal Service v. Brennan, 579 F.2d 188, 191 (2d Cir.1978); Cook v. Pan American World Airways, Inc., 636 F.Supp. 693, 698 (S.D.N.Y.1986).
Varying facts and circumstances may actually add to the Court's understanding of the scope and breadth of the claims and therefore support an intervention motion. Rivera v. New York City Housing Authority, 1995 WL 375912 (S.D.N.Y.1995) at *3 (citing McNeill v. New York City Housing Authority, 719 F.Supp. 233, 250 (S.D.N.Y.1989); Hurley v. Van Lare, 365 F.Supp. 186, 196 (S.D.N.Y.1973), rev'd on other grounds and remanded, 497 F.2d 1208 (2d Cir.1974)). Admitting intervenors who add no new issues "merely clutters the [class] action unnecessarily."
This litigation is still is in its early stages, so that the Intervenors' motion is timely. There is no question that the intervenors have potential claims with questions of law or fact in common with the presently named Plaintiffs. As a family with children under seven that live in a unit that receives CDBG money administered by the City, they are appropriate class members and will provide the Court with additional material to review as this case progresses. The additional Plaintiffs will not detract from the original Plaintiffs' case and will add to the Court's understanding of the facts. See Rivera, 1995 WL 375912 at *3. In addition, since the litigation involves housing that often changes ownership, and may involve a relatively fluid plaintiff class, it may well assist the litigation to have additional named plaintiffs.
Finally, intervention is appropriate here where the intervenors are represented by the same counsel as the other named plaintiffs and their participation will facilitate adjudication of the dispute. See Rivera, id.; Davis v. Smith, 431 F.Supp. 1206, 1209 (S.D.N.Y. 1977).
The intervenors do not create a new class of plaintiffs. There is no Rule 23 motion before the Court at this time and the Court will therefore not consider the potential class defining implications of the Davids' intervention. Additionally, the plaintiffs have not moved for the Davids to be class representatives, nor provided the court with the required showing that they are appropriate. In particular, there must be a showing that there is an absence of conflict and antagonistic interests between them and the class members, and second, that the plaintiffs' counsel is "qualified, experienced and capable." Ross v. A.H. Robins Co., 100 F.R.D. 5, 7 (S.D.N.Y.1982); accord In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir.1992), cert. dismissed, ___ U.S. ___, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993). Defendants must be given an opportunity to provide the Court any arguments they may have on the suitability of the Davids as class representatives.

II. Motions to Reargue

Standard for Considering Motions to Reargue
Local Rule 3(j) provides in pertinent part: There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked. No oral argument shall be heard unless the court grants the motion and specially directs that the matter shall be reargued orally. No affidavits shall be filed by any party unless directed by the court. Thus, to be entitled to reargument under Local Rule 3(j), the moving party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion. See Ameritrust Co. Nat'l Ass'n v. Dew, 151 F.R.D. 237 (S.D.N.Y. 1993); Fulani v. Brady, 149 F.R.D. 501, 503 (S.D.N.Y.1993), aff'd 35 F.3d 49 (2d Cir. 1994); East Coast Novelty Co. v. City of New York, 141 F.R.D. 245, 245 (S.D.N.Y.1992); B.N.E. Swedbank, S.A. v. Banker, 791 F.Supp. 1002, 1008 (S.D.N.Y.1992); Novak v. National Broadcasting Co., 760 F.Supp. 47, *1393 48 (S.D.N.Y.1991); Ashley Meadows Farm Inc. v. American Horse Shows Ass'n, 624 F.Supp. 856, 857 (S.D.N.Y.1985).
Local Rule 3(j) is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court. See Caleb & Co. v. E.I. Du Pont De Nemours & Co., 624 F.Supp. 747, 748 (S.D.N.Y.1985). In deciding a Local Rule 3(j) motion, the court must not allow a party to use the motion to reargue as a substitute for appealing from a final judgment. See Morser, 715 F.Supp. at 517; Korwek v. Hunt, 649 F.Supp. 1547, 1548 (S.D.N.Y.1986), aff'd 827 F.2d 874 (2d Cir. 1987). As such, a party in its motion for reargument "may not advance new facts, issues or arguments not previously presented to the court." Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc., No. 86 Civ. 6447, 1989 WL 162315, at *3 (S.D.N.Y. Aug. 4, 1989).

A. The City's Motion to Reargue is Denied

The City argues that the Court overlooked the fact that the City did not administer CDBG funds to the German unit at the time the class action was filed, and that, in fact, the City ceased to administer said funds on May 8, 1992. If this is true, then the German's did not have standing to sue the City as a PHA for injunctive relief at the time the complaint was filed.
Paragraph 120 of the Second Amended Complaint states that "Defendant City, through HPD, used CDBG funds in the housing of plaintiffs Jennifer, Wellington and Ana Maritza German." The Court assumed at the time of the May Opinion, and the plaintiffs contend in their opposition papers to this motion, that the City through HPD still administers funds to the Montgomery Avenue property. If the facts can be established to the contrary, a motion for relief may well be appropriate, and leave is granted for that purpose.

B. Freddie Mac's motion to Reargue is Denied

In the Opinion, the Court noted that after filing their intervening class complaint, Freddie Mac sold the St. Nicholas Building inhabited by the Goffins. The Court noted that the courts have adopted a "flexible" approach to the mootness doctrine in class actions, particularly where an "inherently transient" exception applies, and where class claims would not be heard due to the relatively short duration of the complained of actions compared to the somewhat lengthy times involved in the litigation process. The May Opinion addressed this issue, in part, as follows:
The Court of Appeals has noted that the application of these various mootness doctrines depends in part on whether the court is presented with a class action because, in general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot. Board of School Commissioners of Indianapolis v. Jacobs, 420 U.S. 128, 129-30, 95 S.Ct. 848, 849-50 [43 L.Ed.2d 74] (1975) (per curiam). In contrast, class certification will preserve an otherwise moot claim. [County of Riverside v.] McLaughlin, 500 U.S. [44] at 51-52 [114 L.Ed.2d 49 (1991)]. "In class actions ... courts have come to recognize that an individual plaintiff may continue to represent the interests of others even after any prospect of individual recovery has vanished." 13A Charles A. Wright, et al., Federal Practice and Procedure § 3533.9 (1984 & Supp.1994); see also Gerstein [v. Pugh], 420 U.S. [103] at 110 n. 11, 95 S.Ct. [854] at 861 n. 11 [43 L.Ed.2d 54 (1975)].
Under the appropriate circumstances, class certification may relate back to the filing of the complaint. Comer, 37 F.3d at 800 (citing McLaughlin, 500 U.S. at 52, 111 S.Ct. at 1667; Sosna [v. State], 419 U.S. [393] at 402, n. 11, 95 S.Ct. [553] at 559, n. 11 [42 L.Ed.2d 532 (1975)]. One such circumstance is where the claims are "`so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'" McLaughlin, 500 U.S. at 52, 111 S.Ct. at 1667 (quoting United States Parole Commission v. Geraghty, 445 U.S. [388] at 399, 100 S.Ct. [1202] at 1210 [63 L.Ed.2d 479 (1980)]); Gerstein, *1394 420 U.S. at 110 n. 11, 95 S.Ct. at 861 n. 11 (class action challenging state practice of holding for trial without probable cause hearing; named class representatives convicted prior to Supreme Court review; not moot because the nature of pretrial detention is such that "it was most unlikely" that the courts would determine the constitutional challenge prior to conviction or release; furthermore, the case was capable of repetition); Comer, 37 F.3d at 800. In such cases, the courts permit the class certification to relate back to the filing of the complaint and hold that the plaintiffs have properly preserved the merits of the case for judicial resolution. Swisher v. Brady, 438 U.S. at 213 n. 11, 98 S.Ct. [2699] at 2705 n. 11 [57 L.Ed.2d 705] (1978); Sosna [v. Iowa], 419 U.S. [393] at 402 n. 11, 95 S.Ct. [553] at 559 n. 11 [42 L.Ed.2d 532 (1975)].
In Comer, even though a class had not yet been certified, the Court of Appeals held that when the claims of the named plaintiffs became moot prior to class certification, "we need not decide whether the potential mootness of the claims of the named plaintiffs moots the entire case because, as we stated above, this is certainly the type of harm that is `capable of repetition, yet evading review.'" citing Sosna, 419 U.S. at 399-400, 95 S.Ct. at 557-58. Comer, 37 F.3d at 800. In Comer minority residents brought a class action on behalf of city public housing project residents and applicants for federal housing assistance alleging violations of the Fair Housing Act. In determining that the claims related back to the date of the original filing, the Court of Appeals stated in the circumstances of that case, "in particular, the transitory nature of the public housing market...." the case would relate back to the original filing.
In this case, the Goffins' original complaint was filed on August 22, 1994. The complaint asked for class certification and for class action equitable relief. At the time that the complaint was filed the claims against Freddie Mac were not moot. The Court finds that the same issues of a transitory population exist in these circumstances. In addition, we have seen in the short life of this case how frequently ownership of buildings turns over. Applying the "capable of evading review" exception to this case, and following the direction established in Comer, the class certification relates back to the original filing and Freddie Mac is an appropriate defendant for the plaintiff class that the Goffins seek to represent.
Freddie Mac argues that the duration of the ownership of Freddie Mac properties is not such that the inherently transitory exception should apply and that even if relation back is appropriate in this case, it was only appropriate to relate back to the time when the motion for class certification was filed, not when the class complaint was filed. The former was filed on September 29, 1994 and the latter on August 22, 1994.
The Opinion held that the inherently transitory exception was met on these facts. This was based on the frequency with which the buildings changed ownership. Freddie Mac often owns buildings for relatively short periods of time. In the case of the Germans, Freddie Mac owned the building for approximately four months in 1992 and for less than three years between 1988 and 1991. In the case of the Goffins, Freddie Mac was selling the unit five months after the Goffins moved in. In an affidavit submitted in support of the Goffins original motion to intervene, the Court was provided with 11 examples of properties in which Freddie Mac took and transferred title on the same day and several others where title was transferred in less than two months. This information led the court to conclude that the ownership of these properties changes frequently.
Courts in this Circuit have applied the inherently transitory exception to persons waiting on lists for federal housing, Comer v. Cisneros, 37 F.3d 775 (2d Cir.1994) (plaintiffs waiting on lists for public housing, some for years), who have applied for public benefits, Robidoux v. Celani, 987 F.2d 931, 938-39 (2d Cir.1993) (all waiting in excess of 30 days); Brown v. Giuliani, 158 F.R.D. 251, 265 (E.D.N.Y.1994) (named plaintiffs waited between 51 days and more than a year to have their applications for review of AFDC benefit *1395 requests), to prisoners in long term custody, Clarkson v. Coughlin, 783 F.Supp. 789, 794-95 (S.D.N.Y.1994) (prisoner incarcerated for more than three years was released prior to class certification).
In each of these cases the Court's certification was "deemed to relate back to the filing of the complaint in order to avoid mooting the entire controversy," Robidoux, 987 F.2d at 939; see also Comer, 37 F.3d at 799; Brown v. Giuliani, 158 F.R.D. at 265; Clarkson v. Coughlin, 783 F.Supp. at 795, not to any subsequently filed motion for certification. In Comer, the complaint was filed "less than two months prior to the filing of the motion for class certification," 37 F.3d at 797 and the court held that the certification related back to the original filing. Similar time frames are present in this case where the intervening complaint was filed approximately 5 weeks prior to the filing of a motion for class certification.
The transitory exception does not require that the harm claimed by the plaintiff be capable of repetition as to the named plaintiff. It is sufficient that the controversy remains alive for members of the class in order for the class certification to relate back to the filing of the original complaint. Jane B. v. New York City Department of Social Services, 117 F.R.D. 64, 68 (S.D.N.Y.1987).
Freddie Mac argues that the District Court's almost three year delay in deciding the class certification motion was what compelled the Court of Appeals in Comer to apply relation back to avoid mootness[1]. However, the Court of Appeals also cited the transitory nature of the population. Relation back to the time of the filing of the complaint is standard in class action cases involving the transitory exception. See Comer, Robidoux, Brown and Clarkson.
Freddie Mac has not presented the Court controlling decisions or factual matters that were put before the Court on the underlying motion and not considered. The motion is denied as it pertains to the mootness question.
The Opinion held that the Germans lack standing to seek injunctive relief from Freddie Mac since Freddie Mac did not own the Montgomery building at the time that the initial complaint was filed. See Cerman II, 885 F.Supp. at 551.
Finally, the motion to reargue the appropriateness of class certification is also denied. Freddie Mac has not cited any cases or facts which the Court overlooked in reaching its decision in May. Instead, Freddie Mac reiterates in an abbreviated form many of its earlier arguments. Local Rule 3(j) is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court. See Caleb & Co. v. E.I. Du Pont De Nemours & Co., 624 F.Supp. 747, 748 (S.D.N.Y.1985). A Rule 3(j) motion is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved. See Morser, 715 F.Supp. at 517; Korwek v. Hunt, 649 F.Supp. 1547, 1548 (S.D.N.Y.1986). The motion is denied as to this issue as well.

C. Plaintiffs' Motion to Reargue is Granted for the Purpose of Clarification and the Decision to Dismiss the Negligence Per Se Claims is Affirmed after Review

Plaintiffs have moved this Court, pursuant to Federal Rule of Civil Procedure 59(e) and Rule 3(j) of the Civil Rules of this Court, to amend the portion of the Opinion that dismissed Plaintiffs' negligence per se claims. At issue are various provisions of the New York City Administrative Code (the "Code"), including Section 27-2013(h) thereof ("§ 27-2013(h)"), which provides:
(1) The owner of a multiple dwelling shall remove or cover in a manner approved by the [Department of Housing Preservation and Development ("DHPD")] any paint or other similar surface coating material having a reading of 0.7 milligrams of lead per square centimeter or greater or containing more than 0.5 of metallic lead based on the non-volatile content of the paint or other similar surface-coating material in the interior *1396 walls, ceilings, doors, window sills or moldings in any dwelling unit in a multiple dwelling in which a child or children six (6) years of age and under reside;
(2) In any multiple dwelling erected prior to January First, Nineteen Hundred Sixty in which paint or other similar surface-coating material is found to be peeling on the interior walls, ceilings, doors, window sills or moldings in any dwelling unit in which a child or children six (6) years of age or under reside, it shall be presumed that the peeling substance contains more than 0.5 percent of metallic lead based on the nonvolatile content of the paint or other similar surface coating material or have a reading of 0.7 milligrams of lead per square centimeter or greater.
(3) The existence of paint or other similar surface-coating material having a reading of 0.7 milligrams of lead per square centimeter or containing more than 0.5 percent of metallic lead based on the non-volatile content of the paint or other similar surface-coating material on the interior walls, ceilings, doors, window sills or moldings in any dwelling unit in which a child or children six (6) years of age and under reside shall constitute a class C immediately hazardous violation and subject the owner of such multiple dwelling unit to the penalties for such violation provided in article two of this subdivision....
(4) DHPD shall transmit to the Department of Health a list of violations.
(5) DHPD shall establish procedures for the enforcement of this subdivision.
Title 27, Chapter 2  Housing and Maintenance Code, § 27-1013(h).
In particular, the parties dispute whether a violation of § 27-2013(h) constitutes negligence per se, or is merely evidence of negligence. Because the parties' motion papers, as well as many of the cases cited therein, reveal that this distinction is clouded by no small amount of confusion, some clarification is warranted.
Under the rule of negligence per se, if a statute is designed to protect a class of persons, in which the plaintiff is included, from the type of harm which in fact occurred as a result of its violation, the issues of the defendant's duty of care to the plaintiff and the defendant's breach of that duty are conclusively established upon proof that the statute was violated. See Prosser and Keeton on Torts, pg. 229-30, 5th Ed.1984; see also Martin v. Herzog, 228 N.Y. 164, 126 N.E. 814 (1920).
Although the effect of the rule is to stamp the defendant's conduct as "negligence," the causal relation between the violation and the harm to the plaintiff remains to be established. If violation of the statute was the proximate cause of the plaintiff's injury, then the plaintiff may recover upon proof of the violation. If the violation had no direct bearing on the injury, however, proof of the violation is irrelevant. Brown v. Shyne, 242 N.Y. 176, 180, 151 N.E. 197 (1926).
Alternatively, violation of a statute may be found to be merely evidence of negligence which the jury may consider along with the totality of the evidence. In such cases, the statute does not create a duty of care toward the plaintiff and the defendant's violation of the statute does not definitively establish a breach of duty to the plaintiff.
As discussed in the May Opinion, the New York Court of Appeals has indicated that the Code has the force and effect of a statute in New York City. See Guzman v. Haven Plaza Hous. Dev. Fund Co., 69 N.Y.2d 559, 565 n. 3, 509 N.E.2d 51, 52, 516 N.Y.S.2d 451, 452 (1987); see also Juarez v. Wavecrest Mgmt. Team Ltd., 212 A.D.2d 38, 627 N.Y.S.2d 620, 625 (1st Dep't 1995). Violation of a statute, however, does not automatically constitute negligence per se. See Gain v. Eastern Reinforcing Service, Inc., 193 A.D.2d 255, 603 N.Y.S.2d 189, 191 (3d Dep't 1993). Only statutes designed to protect a definite class of persons from a particular hazard, which persons within the class are incapable of avoiding, can give rise to negligence per se for violation of the statute. Van Gaasbeck v. Webatuck Central Sch. Dist. No. 1 of Towns of Amenia, 21 N.Y.2d 239, 244, 234 N.E.2d 243, 245, 287 N.Y.S.2d 77, 80 (1967).
*1397 Although a statutory scheme intended for the protection of a particular class does not expressly provide for civil liability, a court may, in furtherance of the statutory purpose, impose negligence per se, or even strict liability, for a statutory violation. See Trimarco v. Klein, 56 N.Y.2d 98, 107, 436 N.E.2d 502, 506, 451 N.Y.S.2d 52, 56 (1982). In order to warrant a finding of negligence per se for a statutory violation, the statute must evidence "an intention, express or implied, that from disregard of [its] command a liability for resultant damages shall arise `which would not exist but for the statute.'" Gain v. Eastern Reinforcing Serv., 193 A.D.2d 255, 603 N.Y.S.2d 189, 191 (3d Dep't 1993), quoting Shepard v. Zachary P. Taylor Publ. Co., 234 N.Y. 465, 468, 138 N.E. 409 (1923). Three factors are of central importance in this inquiry: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted, (2) whether a finding of negligence per se for violation of the statute would promote the legislative purpose, and (3) whether creation of such liability would be consistent with the legislative scheme. See Id.
In characterizing § 27-2013(h), the Appellate Division recently noted,
In plain and unambiguous language, [§ 27-2013(h)] puts the burden of identifying and removing lead paint hazards upon the landlord. The Code even creates a statutory presumption that peeling paint in older buildings has the prohibited level of lead content. The legislative intent to protect children under six, and the consequent obligations imposed upon landlords would be rendered meaningless if a landlord were not required to take action to remedy a lead condition in its building until it has received "notice" of the condition as the result of a confirmed test by others. Such a result would only encourage a landlord to remain "ignorant" and only obligate him to ameliorate such a condition upon notice. ... [S]uch confirmation will usually come only after a child has already been poisoned.
Juarez v. Wavecrest Mgmt. Team Ltd., 212 A.D.2d 38, 627 N.Y.S.2d 620, 626-27 (1st Dep't May 30, 1995).
The Juarez Court concludes that § 27-2013(h) evinces a legislative intent to protect children under age six from the hazards of lead paint. Further, "[c]hildren residing in inner city apartments are a definable class who can be expected to act upon childish instincts and impulses in eating chips of paint. Landlords are in a far better position than tenants, particularly those tenants under six, to know whether or not peeling and crumbling paint in an apartment is likely to contain lead." Id. at *13.
While stating that a violation of § 27-2013(h) is negligence per se, the Juarez Court goes on to say, however, that "[t]he application of this standard [negligence per se], rather than that of absolute liability, imposes on the landlord a standard of reasonableness. The landlord may, unlike the case with absolute liability, persuade the fact finder that the existence of a lead paint hazard existed despite his diligent and reasonable efforts to prevent it." Juarez, 627 N.Y.S.2d at 627.
The opportunity to avoid liability by showing that, notwithstanding a violation of statute, reasonable efforts were made to remedy the lead paint hazard would appear to be foreclosed under a regime of negligence per se. Under a negligence per se regime, the statute creates the duty and the violation establishes the breach. All that remains to be proved in a negligence action are causation and damages. The Appellate Division's contrary indication in Juarez suggests that it viewed the violation of § 27-2013(h) merely as evidence of negligence, which may be rebutted by a showing that, notwithstanding the statutory violation, the defendant satisfied its duty of care by taking reasonable precautions for the plaintiff's safety.
Thus, following Juarez, the Court finds that violations of § 27-2013(h) is evidence of negligence.
The motion to reargue is granted, for the purpose of further clarification, but the motion to dismiss stands for the reasons stated above and in the Opinion.

*1398 III. Motions to Certify

Standards for Reviewing Request to Certify
In order for Freddie Mac or the City to bring an issue to the Court of Appeals at this time, this Court must certify, pursuant to 28 U.S.C. s 1292(b), that rulings within the May 8 Opinion: (1) involve a controlling question of law (2) as to which there are substantial grounds for difference of opinion, and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. s 1292(b); see also Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria, 921 F.2d 21, 23 (2d Cir.1990).
The Second Circuit has repeatedly "urged the district courts to exercise great care in making a § 1292(b) certification." Westwood Pharmaceuticals, Inc. v. National Fuel Gas Dist. Corp., 964 F.2d 85, 89 (2d Cir.1992). Certification is limited to extraordinary cases where appellate review might avoid protracted and expensive litigation. It is not intended as a vehicle to provide early review of difficult rulings in hard cases. Sadowski v. Technical Career Insts., Inc., 1995 WL 117595, 1995 U.S.Dist LEXIS 3184, *7; Abortion Rights Mobilization, Inc. v. Regan, 552 F.Supp. 364, 366 (S.D.N.Y.1982).
This standard is not met here. While there is no doubt that a ruling on appeal in favor of the City or Freddie Mac would reduce the discovery each would be required to produce, it would not end the litigation as to either of them, nor would it substantially reduce the unresolved issues in this case, as there are numerous claims and other defendants who would be unaffected by a favorable ruling on these issues. As described below, in the motion to sever the individual defendants, the Court would likely be reluctant to sever the non-class defendants at this time since the named plaintiffs' claims involve all of the defendants and overlapping issues of law and fact.
Regardless, however, of the effect that a successful appeal might have, the test for certifying an issue is a three part test. Each prong must be satisfied. Even assuming that the Second Circuit's answer would control the outcome and advance the termination of this litigation, there are not "substantial grounds for difference of opinion" as to this Court's resolution of the mootness question in the case of Freddie Mac or of the right of the plaintiffs to sue the City under the federal statutes.

A. The City's Motion is Denied

There is no reason to certify the question of whether or not the Germans have standing to sue the City in its capacity as a PHA. This is an issue which will be resolved once the factual question is resolved. It cannot be resolved until there is evidence on the question of whether or not the City administered CDGB funds to the Montgomery Avenue building at the time the complaint was filed.
As to the question of whether or not the LPPPA or CDBG gives rise to a cause of action under 42 U.S.C. § 1983, the parties agree that the precise question at issue in this case has not yet been directly addressed by either the Supreme Court or the Second Circuit. Simply because a question of law has not been authoritatively addressed, however, does not make the question grounds for a substantial difference of opinion. Hubbell, Inc. v. Pass & Seymour, Inc., 1995 WL 464906 at *2 (S.D.N.Y.1995); Chamarac Properties, Inc. v. Pike, 1994 WL 410902, *2 (S.D.N.Y.1994); American Tel. & Tel. Co. v. North American Industries, Inc., 783 F.Supp. 810, 814 (S.D.N.Y.1992). Nor, for that matter, does the fact that the parties themselves disagree as to the interpretation of persuasive authority constitute a "difference of opinion" sufficient to warrant certification. See Hubbell, Inc. v. Pass & Seymour, Inc., at *2.
In Chan v. City of New York, 1 F.3d 96, 102-106 (2d Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 472, 126 L.Ed.2d 423 (1993), a case decided after the Supreme Court decided Suter v. Artist M., 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992), the Court of Appeals articulated a test for determining whether or not a federal statute created an enforceable right under § 1983. The Court *1399 of Appeals applied the Supreme Court test in Wilder v. Virginia Hospital Ass'n., 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), "or to the extent that it differs, the Suter analysis ..." Following the procedures mandated in Chan, the May Opinion found a cause of action against the City as a PHA.
The City does not believe that the Opinion is correct although it describes the question as "a difficult and close one." The City has not shown that there is substantial ground for differences of opinion. In fact there is no opinion other than this one on this exact question of whether a PHA can be sued for violations of the LPPPA by a person living in housing that receives CDBG funds. On the other hand, there is no "substantial ground for difference of opinion" as to the methodology that should be used to determine whether or not a particular statute confers a right to sue pursuant to § 1983. Chan described the standard and this Court applied it.
Finding no substantial ground for a difference of opinion, the use of interlocutory appeal would be inappropriate in this instance and the motion, is therefore denied.

B. Freddie Mac's Motion to Certify is Denied

Freddie Mac has moved to certify two issues to the Court of Appeals: 1) whether the fact that the Goffins' injunctive claims against Freddie Mac were moot prior to the filing of the class certification motion makes them improper class representatives and 2) whether plaintiffs met their burden of establishing the prerequisites of Rule 23 and are entitled to proceed against Freddie Mac in this action.
As discussed above, in the motion to reargue section, the original ruling on mootness does not present the sort of controversial ruling that requires interlocutory review. Freddie Mac has not presented substantial grounds for difference of opinion, and for this reason as well as those described above, the motion will be denied.
While the Third Circuit held in Lusardi v. Xerox Corp., 975 F.2d 964 (3rd Cir.1992)[2] that the class representative's claim must be live at the time that the motion to certify is filed, the Second Circuit has rendered no such decision and has reaffirmed twice in the last few years and since the Lusardi decision that in class actions the relation back can be to the filing of the complaint.[3]See Comer v. Cisneros, 37 F.3d 775 (2d Cir.1994); Robidoux v. Celani, 987 F.2d 931, 938-39 (2d Cir.1993). Because there is no difference of opinion among controlling cases in this Circuit and, as discussed above, this would only resolve one piece of this litigation, the motion as to this question, is denied.[4]
The motion to certify the class certification is also denied. The Second Circuit has directed district courts to apply Rule 23 according to a liberal rather than a restrictive interpretation, see Korn v. Franchard Corp., 456 F.2d 1206, 1208-09 (2d Cir.1972); Green v. Wolf Corp., 406 F.2d 291, 298, 301 (2d Cir.1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), and has explicitly noted its preference for class certification in suits involving public housing because of the fluid composition of the public housing population. See Comer v. Cisneros, 37 F.3d 775, 797 (2d Cir.1994).
However, despite the liberal interpretation that this Court must give to Rule 23, it may certify this as a class action only after undertaking "rigorous analysis" to assure *1400 that the requirements of the Rule are satisfied. General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372-73, 72 L.Ed.2d 740 (1982).
The Court conducted a rigorous and lengthy review of the Rule 23 requirements for class certification and held in its May Opinion that certification was proper. It is the role of the District Court to determine what is manageable. Freddie Mac presented no basis for substantial grounds for differences of opinion, except by reciting the same cases it argued supported denial of certification in the first instance. Those cases were considered fully in the May Opinion and did not mandate a different outcome then. For this reason, and those described above, certification of the decision to certify the class would be improper.
Under the Opinion, three classes were certified: one of children less than seven years living in housing owned by Freddie Mac, a second of same living in housing to which the City administers CDBG funds and the third of same to which NYCHA administers Section 8 funds. Each of these three classes has subclasses that were defined by plaintiffs.

IV. The Claims Against the 1710 Defendants Will Not Be Severed

The 1710 Defendants have moved the Court to sever the German Plaintiffs' claims against them from the Plaintiffs' claims against the other defendants pursuant to Federal Rule of Civil Procedure 21[5]. Rule 21 permits a court to add or drop parties to an action when doing so would serve the ends of justice and further the prompt and efficient disposition of the litigation.[6]E.I. Du Pont De Nemours & Co. v. Fine Arts Reproduction Co., 1995 WL 312505, at *1-2, 1995 U.S.Dist LEXIS 7040, *4-5 (S.D.N.Y. May 22, 1995); Levine v. Federal Deposit Ins. Corp., 136 F.R.D. 544, 550 (1991).
The decision whether to sever a party or claim from an action is within the broad discretion of the district court. Id., quoting New York v. Hendrickson Bros., Inc., 840 F.2d 1065 (2d Cir.), cert. denied, 488 U.S. 848, 109 S.Ct. 128, 102 L.Ed.2d 101 (1988); 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1689 (1988). In deciding whether severance is appropriate, courts generally consider (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted and (4) whether the party requesting the severance will be prejudiced if it is not granted. See Hal Leonard Publ. Corp. v. Future Generations, Inc., 1994 WL 163987, at *1-2, 1994 U.S.Dist. LEXIS 5195, *4-5 (S.D.N.Y. April 22, 1994), citing cases.
At this point, severing the Plaintiffs' claims against the 1710 Defendants would neither serve the interests of justice nor further the prompt and efficient resolution of this litigation. There are numerous questions of law and fact common to the German Plaintiffs' claims against the 1710 Defendants and against the other defendants. For example, at any trial in this matter the German Plaintiffs will be required to prove, inter *1401 alia, that their apartment was painted with a paint having a lead content greater than the maximum allowable under § 27-2013(h), that the children who ingested the paint were under the age of seven, that the injuries suffered by the German children were caused by their ingestion of the lead paint, that the Germans were not warned of the presence of the lead paint, at what level of lead is there harm, and other elements of the state law claims.
Proof of many of these points as they pertain to the 1710 Defendants likely will in significant part require the testimony of the same witnesses and presentation of the same evidence as will be required in proving them against the other defendants. To require the German Plaintiffs to prove these points at separate trials, one against the 1710 Defendants, and another against the City, Freddie Mac, Caisi and Tebec as prior owners and managers of the same building, would be repetitious, prolong the ultimate termination of this litigation, and place an unnecessary burden on the German Plaintiffs. In addition, severance of the claims against the 1710 Defendants would pose a significant danger of inconsistent judgments in the separate actions.
Balanced against these concerns, the danger that the 1710 Defendants will be prejudiced by having the German Plaintiffs' claims against them litigated in the same action as the claims against the other defendants is relatively insubstantial. Moreover, whatever minimal degree of prejudice might inhere in a joint trial can be eliminated by careful instructions to the jury.
For the foregoing reasons, the 1710 Defendants' motion for severance will be denied.

Conclusion
For the reasons stated above, Defendants' motions are denied, Plaintiffs' motion to reargue is granted and the motion to intervene is granted.
It is so ordered.
NOTES
[1] Freddie Mac offers several other means to distinguish Comer. As the Court did not rely on those issues in formulating its decision, it need not distinguish them here.
[2] While the Court also ruled that the facts of the Lusardi case did not invoke the transitory exception, thus rendering its holding in such a case advisory, the statement of the Third Circuit's pronouncement is strong enough that it is not appropriate to argue this distinction.
[3] The line of cases that allows relation back to the time that the complaint was filed recognizes that at some point the named plaintiffs' claim is moot, but allows the case to proceed so as to avoid mooting the entire controversy. In this case the Goffins' interest and ability to litigate the claims on behalf of the class was not significantly different on August 31, 1994 than it was shortly thereafter on September 29 when the class certification motion was filed. Furthermore, the claim was not moot when the briefing schedule for the motion was established by the Court at a conference on August 24, 1994.
[4] In addition, the proposed intervention of plaintiffs living in Freddie Mac housing may moot this issue, while it concededly would not cure any lack of jurisdiction of the original class plaintiffs.
[5] Federal Rule of Civil Procedure 21 provides: Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.
[6] Although the 1710 Defendants cite Fed.R.Civ.P. 21 as the source of this Court's authority to sever the German Plaintiffs' claims against them, the Court also has authority pursuant to Fed.R.Civ.P. 42(b) to order separate trials of a plaintiff's claims when doing so will be expeditious and serve the interests of judicial economy. Fed. R.Civ.P. 42(b). Technically, Rule 21 deals with severance of parties, while Rule 42(b) deals with separation of trials. The distinction is that separate trials result in one judgment unless the Court orders otherwise pursuant to Fed.R.Civ.P. 54(b), whereas severance results in two judgments. The same considerations are implicated, however, under either rule, namely, the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation. See Sutton Hill Assocs. v. Landes, 1988 WL 56710, at *1-2, 1988 U.S.Dist. LEXIS 4746, *4-5 (S.D.N.Y. May 24, 1988).