**In re MERRILL LYNCH & CO., INC. RESEARCH REPORTS SECURITIES LITIGATION.**

**In re InfoSpace, Inc. Securities Litigation.**

**Nos. 02 MDL 1484, 02 CV 8474(MP).**

United States District Court, S.D. New York.

March 27, 2003.

See, also, 2003 WL 253187.

# ORDER SEVERING CORPORATE CLAIMS AGAINST INFOSPACE, INC. AND SUGGESTING REMAND TO THE WESTERN DISTRICT OF WASHINGTON

MILTON POLLACK, Senior District Judge.

Defendants InfoSpace, Inc. and its CEO Naveen Jain and CFO Tammy Halstead ("InfoSpace defendants") move for severance of the corporate claims against them from the omnibus Merrill Lynch research reports litigation, and remand of those claims to the United States District Court for the Western District of Washington. The InfoSpace plaintiffs oppose the motion. Defendant Merrill Lynch does not oppose severance and remand, provided that only the corporate claims against InfoSpace go to Washington while the research reports claims against Merrill Lynch (relating to InfoSpace stock) remain before this Court. For the reasons set forth below, the severance motion is granted. The Court will recommend to the Judicial Panel on Multidistrict Litigation remand of the InfoSpace corporate claims to the Western District of Washington.

### Factual Background

The InfoSpace plaintiffs filed their first complaint on June 19, 2001 in the Western District of Washington.[1] That 23–page document asserted, in the main, a Rule 10b–5 cause of action for fraud against the InfoSpace defendants (hereinafter "corporate claims").[2] Plaintiffs alleged that Defendants knowingly (or with reckless disregard) misrepresented, through the media and in SEC filings, the company's (1) earnings for fiscal years 1999 and 2000; and (2) expected earnings–allegedly projected by Defendants to exceed $300 million–for 2001. Plaintiffs further alleged in their amended complaint that Defendant Jain reaped, during the class period, over $192 million in illegal insider trading profits from selling 3 million shares of InfoSpace stock. Defendant Halstead was alleged to have made nearly $17 million from insider trading.

The original InfoSpace complaint involved essentially a standard pump-and-dump stock fraud and insider trading gain and these claims were asserted solely with respect to the InfoSpace corporation and certain of its officers. The original complaint did not assert any claims against Merrill Lynch and its former star internet analyst, Henry Blodget, and they were not named as defendants; they were added as defendants in the amended complaint.

In April 2002, Eliot Spitzer, the New York State Attorney General, issued a press release reporting the results of an investigation by his office into the stock ratings system employed by Merrill Lynch. The investigation "concluded that the firm's supposedly independent and objective investment advice was tainted and biased by the desire to aid Merrill Lynch's investment banking business." On the heels of this investigation, scores of private securities fraud actions were filed against Merrill Lynch and Henry Blodget (the "Merrill Lynch defendants") around the country. These actions asserted, in essence, that alleged conflicts of interest within Merrill Lynch led to questionable "buy" recommendations by its research division–primarily dealing with internet stocks–broadcast supposedly in order to attract and keep business (from the internet companies covered by the firm's research analysts) for the firm's investment banking division. (These cases are hereinafter referred to as the analyst cases.)

On May 9, 2002, approximately one month after Attorney General Spitzer issued his press release, the InfoSpace plaintiffs filed their first consolidated amended complaint in the Western District of Washington. That 103–page document asserted the same claims as their original 23–page complaint, adding, however, new analyst claims against Merrill Lynch and Blodget relating to their research coverage of InfoSpace stock. According to

1. InfoSpace maintains its corporate headquarters in Bellevue, Washington.

2. Complaint, *Horton v. InfoSpace, Inc.*, ¶ 6 ("Plaintiff brings this action pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder by the SEC.").

the InfoSpace plaintiffs, the complaint further alleged a presumed conspiracy between the Merrill Lynch defendants and the InfoSpace defendants to defraud them.

In an October 11, 2002 Transfer Order, the Judicial Panel on Multidistrict Litigation (MDL Panel) centralized all of the analyst cases against Merrill Lynch and Blodget for coordinated or consolidated pretrial proceedings before this Court. The case was given a multidistrict docket number (02–MDL–1484) and the caption *In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation.* (The term "research reports litigation" is used synonymously with the analyst cases.) The new analyst claims in the InfoSpace plaintiffs' first consolidated amended complaint closely tracked the claims asserted against the Merrill Lynch defendants in the other analyst cases filed around the country. The Merrill Lynch defendants moved the MDL Panel to centralize the Washington InfoSpace action with the other analyst cases that had been filed against the Merrill Lynch defendants. The Panel did so, and the Washington InfoSpace action was brought before this Court with the other analyst cases.

At the hearing before the MDL Panel, the InfoSpace defendants (and certain other parties) moved the Panel to sever and remand to the Western District of Washington the corporate claims against the InfoSpace defendants, and to leave the analyst claims newly asserted by the InfoSpace plaintiffs against the Merrill Lynch defendants centralized in New York with the other analyst cases. The InfoSpace plaintiffs opposed that disposition. They asserted that the first consolidated amended complaint now included allegations that the InfoSpace defendants conspired with the Merrill Lynch defendants to mislead purchasers–and therefore that severance was inappropriate.

The MDL Panel centralized all of the analyst cases before this Court on October 11, 2002, including the Washington InfoSpace action. With respect to the Washington case, the Panel concluded as follows:

> The presence of conspiracy allegations in *InfoSpace* is *debatable* and we are reluctant, on the record now before us, to make a determination that claims in *InfoSpace* are severable. It may be, on further refinement of the issues and close scrutiny by Judge Milton Pollack, that claims against the InfoSpace defendants can be remanded to the Western District of Washington for further proceedings in advance of claims against the Merrill Lynch defendants.[3]

The InfoSpace defendants have now moved this Court for remand to Washington of the corporate claims as asserted in the original Washington InfoSpace complaint and severance thereof from the analyst claims.

### *Legal Considerations*

 **Severance.** The text of Rule 21 of the Federal Rules of Civil Procedure reads as follows:

### Misjoinder and Non–Joinder of Parties

> Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

The caselaw of this Circuit has established that "Rule 21 permits a court to add or drop parties to an action when doing so would serve the ends of justice and further the prompt and efficient disposition of the litigation."[4] Specifically, a court considering a severance motion should weigh the following factors in making its determination:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be

3. Transfer Order, 02–MDL–1484, Judicial Panel on Multidistrict Litigation, at 2 (October 11, 2002) (underlined emphasis supplied).

4. *German v. Fed. Home Loan Mortgage Corp.*, 896 F.Supp. 1385, 1400 (S.D.N.Y.1995); *see E.I. Du Pont De Nemours & Co. v. Fine Arts Reprod. Co.*, 1995 WL 312505, at *2 (S.D.N.Y. May 22, 1995) (same); *Totaltape, Inc. v. Nat'l Ass'n of State Bds. of Accountancy*, 1987 WL 7736, at *9 (S.D.N.Y. Mar.4, 1987) (same).

facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.[5]

Further, "[t]he decision whether to grant a severance motion is committed to the sound discretion of the trial court."[6] One practice guide notes:

> The trial court ... has great discretion to restructure an action to promote the efficient administration of justice. Rule 21 gives the court tools to jettison those parties and claims that are not within its jurisdiction or that are not conveniently prosecuted together, preserving parties and claims that are properly before it.
>
> ...
>
> In exercising its discretion under Rule 21, the court must consider principles of fundamental fairness and judicial efficiency. As part of this inquiry, the court should consider whether an order under Rule 21 would prejudice any party, or would result in undue delay.[7]

In substance, then, this Court has broad discretion to sever claims and parties, so long as in doing so the Court furthers the aims of justice, promotes judicial economy and efficiency, and avoids prejudicing the rights of any party.

**Remand.** Finally, under 28 U.S.C. § 1407(a), the Judicial Panel on Multidistrict Litigation may separate any claim, cross-claim, counter-claim, or third-party claim and remand any such claims to the district court of origin before the remainder of an action is remanded to that district. Under Rule 7.6(d) of the Panel's rules, however, "[t]he Panel is reluctant to order remand absent a *suggestion of remand* from the transferee district court."[8]

### Application

The Court is convinced that it is in the best interests of justice to sever the analyst claims from the corporate and alleged insider trading claims against the InfoSpace defendants. The plaintiffs in the other InfoSpace action pending before this Court do not oppose such severance.[9] The Washington InfoSpace plaintiffs stand alone in their opposition to severance, and they base that stance primarily on their contention that the first consolidated amended complaint alleges a conspiracy between the InfoSpace and Merrill Lynch defendants.

In *Sykes v. James*, the Second Circuit affirmed a motion to dismiss because "conclusory allegations of conspiracy ... are insufficient."[10] Here, the first consolidated amended complaint pleads very little in the way of concrete connection between the In-

---

5. *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 204 F.R.D. 248, 250 (S.D.N.Y.2001) (quoting *Morris v. Northrop Grumman Corp.*, 37 F.Supp.2d 556, 580 (E.D.N.Y.1999)); *German*, 896 F.Supp. at 1400 ("In deciding whether severance is appropriate, courts generally consider (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof, (3) whether the party opposing the severance will be prejudiced if it is granted and (4) whether the party requesting the severance will be prejudiced if it is not granted.").

6. *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1082 (2d Cir.1988); *see also Garber v. Randell*, 477 F.2d 711, 714 (2d Cir.1973) ("[T]he court's power to sever claims and order separate trials is likewise discretionary, requiring it to balance the factors of benefit and prejudice that will result from the alternative courses. The denial of a motion for severance will not, therefore, usually be set aside in the absence of a clear showing of abuse of discretion.").

7. *Moore's Federal Practice—Civil* §§ 21.02[4], 21.05 (2002) (footnotes and internal quotation marks omitted).

8. 199 F.R.D. 425 at 437 (emphasis supplied).

9. That case is entitled *In re Merrill Lynch & Co. InfoSpace Analyst Reports Securities Litigation*, 01–CV–6881 (MP). It is one of the analyst cases centralized by the MDL Panel in 02–MDL–1484. The Court notes that the interests of the Washington InfoSpace plaintiffs–with respect to their analyst claims at least–are virtually identical with the interests represented by the plaintiffs in the Merrill Lynch–InfoSpace action already pending before the Court (i.e. 01–CV–6881).

10. 13 F.3d 515, 521 (2d Cir.1993); *see also North Jersey Secretarial School, Inc. v. McKiernan*, 713 F.Supp. 577, 584 (S.D.N.Y.1989) ("Even notice pleading requires that facts be pleaded to support a conspiracy claim.").

foSpace defendants (like CEO Naveen Jain) and Blodget at Merrill Lynch. In fact, the 103–page complaint contains only two brief paragraphs describing "[t]he Jain–Merrill Lynch–Blodget Connection." The wording of those paragraphs is conclusory and lacks detail:

> Jain, who for the reasons stated above, needed to keep InfoSpace stock as high as possible, viewed Blodget and Merrill Lynch as a vehicle to reach that objective. Blodget, for his part, was looking for new clients who he could not only report on but also secure fees from for underwriting work.
>
> *Jain and Merrill Lynch,* commencing in December 1999 and continuing through the Class Period, *frequently met to plot* how Merrill Lynch could promote InfoSpace. During the Class Period Jain provided Blodget and other Merrill Lynch analysts with the information later contained in Merrill Lynch's reports on InfoSpace.[11]

There are no specifics as to when or where or how often the alleged meetings took place or on what basis Jain and the Merrill Lynch *firm* allegedly met to "plot." There are no specifics as to any information allegedly provided by Jain to Blodget that was anything other than public material or material ordinarily provided by an officer or director to a research analyst covering his or her firm. There is no allegation of *quid pro quo,* other than that Merrill Lynch attempted to gain InfoSpace as a client for investment banking services and other work. Even on that point, it is conceded that InfoSpace did *not* retain Merrill Lynch for investment banking services, unlike other issuer-companies mentioned in Attorney General Spitzer's report. In short, the complaint simply attempts to create the impression that a fraud was being perpetrated upon investors by InfoSpace and Merrill Lynch working in active concert. Blodget is not alleged to have intended or *gained* anything specific from his efforts–in any event, he is not alleged to have gained insider trading profits. There is no allega-

tion that Jain paid or gave Blodget anything, or that Blodget traded on inside information. For these reasons, the first consolidated amended complaint falls short of alleging a cognizable conspiracy between the InfoSpace and Merrill Lynch defendants.

More importantly, even if the Court were persuaded that conspiracy allegations did exist in sufficient detail in the first consolidated amended complaint, the InfoSpace plaintiffs still fail to state a viable claim because there is no private cause of action for conspiracy under the federal securities laws under which the main allegations are brought. The Second Circuit has held that "the effect of the Supreme Court's decision in *Central Bank*[12] is to bar a cause of action for conspiracy to violate § 10(b) and Rule 10b–5."[13] As noted above, the bulk of the allegations here are brought under § 10(b) and Rule 10b–5, and there can be no viable conspiracy claim under those provisions.

Weighing the five "severance factors" outlined above, the Court is persuaded that the balance tips decisively in favor of severance and remand. There are two sets of defendants and two sets of claims. The original complaint was filed in June 2001, nearly a year before the first consolidated amended complaint. The first complaint was a thin document alleging a standard stock fraud against a company and certain of its officers, who were alleged to have gained substantial profits from insider trading. The consolidated amended complaint, by contrast, simply made use of the releases by the New York State Attorney General in April 2002. The amended complaint contained an entirely new set of claims against the new Merrill Lynch defendants, claims closely matching those filed in many of the other analyst cases. The connection between the claims is tenuous. In the other approximately 24 consolidated analyst cases against Merrill Lynch, none of the issuer companies is a named defendant. Among all the analyst cases, it is only the Washington InfoSpace

---

**11.** First Consolidated Amended Complaint at ¶¶ 86–87 (emphasis supplied).

**12.** *Central Bank v. First Interstate Bank,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).

**13.** *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin,* 135 F.3d 837, 844 (2d Cir.1998).

action that names an issuer company as a defendant.

In fact, the InfoSpace plaintiffs, though they may not realize it, could actually be assisted by taking their corporate claims back to Washington. It is easy to see why this is so. If their corporate and analyst claims stayed together in one action before this Court, it might very well be that the other InfoSpace plaintiff, who was appointed lead plaintiff earlier in a separate InfoSpace action filed against Merrill Lynch in the Southern District of New York,[14] would take control of *both* InfoSpace actions–which would necessarily *include* (because not severed) the corporate claims asserted against the InfoSpace company in Washington. Not only would the litigation then be taking place nearly 3000 miles away from where the InfoSpace defendants are located, but also the litigation would be controlled by a different lead plaintiff and lead counsel–in New York.

There is no prejudice here to the interests of the Washington InfoSpace plaintiffs. They are free to pursue actively their claims against the InfoSpace defendants in Washington. At the same time, their claims against Merrill Lynch can be pursued in New York. They can work with the plaintiffs in the other InfoSpace analyst action pending before the Court to see that their common claims against Merrill Lynch are advanced in the best possible way.

Finally, as the InfoSpace defendants point out, the interests of judicial economy and efficiency are self-evidently furthered by severance in material ways. Discovery burdens and associated expenses would operate expansively absent a severance.

Accordingly, it is ORDERED That:

(1) The corporate claims asserted against InfoSpace, Inc., Naveen Jain, and Tammy Halstead in the June 19, 2001 complaint (C–01–0913–Z, W.D.Wash.) are hereby severed from the first consolidated amended complaint (02–CV–8474 (MP)) pursuant to Rule 21 of the Federal Rules of Civil Procedure. Remaining analyst claims against the Merrill Lynch defendants will stay before this Court

under the caption *In re InfoSpace, Inc. Securities Litigation,* 02–CV–8474 (MP).

(2) The Washington InfoSpace plaintiffs are directed to file (for the sake of clarity only) an appropriate consolidated amended complaint on the analyst issues against the Merrill Lynch defendants in *In re InfoSpace, Inc. Securities Litigation,* 02–CV–8474 (MP) within 30 days of the date of this order. A courtesy copy should be submitted to Chambers. Counsel should of course consider and observe the pleading requirements of the PSLRA (see 15 U.S.C. § 78u–4(b)(1) & (2)) and Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure and comply fully with all applicable law regarding the pleading of loss causation. The amended complaint will be subordinated to the rulings heretofore made pertaining to the most adequate plaintiff(s) and appointed counsel.

Accordingly, the Court respectfully suggests that the Judicial Panel on Multidistrict Litigation remand the severed corporate claims against the Washington InfoSpace defendants to the U.S. District Court for the Western District of Washington.

**So ordered.**