**TELECTRONICS PROPRIETARY, LTD. Plaintiff,**

v.

**MEDTRONIC, INC. Defendant,**

v.

**TELECTRONICS, INC., Telectronics U.S. A. Inc., and Telectronics Proprietary Ltd. Additional Defendants On Counterclaim.**

**No. 83 CIV. 8568 (PKL).**

United States District Court, S.D. New York.

Jan. 7, 1987.

Gottlieb, Rackman & Reisman, New York City (Michael I. Rackman, Allen I. Rubenstein, of counsel), William C. Nealon, Suffield, Conn., for plaintiff.

Quirk and Bakalor, New York City (Richard Bakalor, Thomas E. Tookey, of counsel), Medtronic, Inc., Minneapolis, Minn. (Grady J. Frenchick, Robert D. Beck, Marcea B. Staten, of counsel), for defendant.

## ORDER

LEISURE, District Judge:

This is an Order granting defendant Medtronic, Inc.'s ("Medtronic") Request for

Certification to the Court of Appeals for the Federal Circuit, under 28 U.S.C. § 1292(b), of this Court's Order dated September 8, 1986.

Having reviewed the submissions and arguments in support of and in opposition to Medtronic's Request for Certification, this Court is of the opinion that the September 8, 1986 Order decides a controlling question of law as to which there is substantial ground for difference of opinion and that an appeal from that Order may materially advance the ultimate termination of the litigation.

### Factual Background

In the underlying action, plaintiff Telectronics Proprietary, Ltd. ("Telectronics"), seeks a declaratory judgment of patent invalidity and non-infringement with respect to three cardiac pacemaker devices, United States Letters Patent No. 3,648,707, No. 4,059,116, and No. 4,312,355, which are owned by Medtronic.

Medtronic filed counterclaims for infringement of the same three Letters Patent and for infringement of United States Letters Patent No. 3,595,242 ("the '242 patent"), also owned by Medtronic. Medtronic seeks a declaration that the '242 patent and the other three Letters Patent are valid, infringed and enforceable. Thus, there are four patents in issue, and Telectronics requests that they "be declared invalid and unenforceable, and that Telectronics be declared not to have infringed said patents." Supplemental and Amended Complaint at 17.

Medtronic has moved to disqualify Michael I. Rackman, Esq. ("Rackman"), his law firm of Gottlieb, Rackman & Reisman, and William C. Nealon, Esq. ("Nealon"), from representation of plaintiff and counterclaim defendants Telectronics, herein, due to their prior representation. The facts, relevant to this Certified Order, briefly stated, are as follows: Barouh V. Berkovits ("Berkovits"), a former employee and director of research and development of American Optical Corporation ("AO"), invented a cardiac pacemaker in the late 1960's. When AO, the original patent hold-er, obtained the '242 patent for Berkovits' invention, Nealon as in-house counsel for AO, and Rackman as additional counsel for AO, participated in the prosecution of the patent. Subsequent to the issuance of the '242 patent to AO, the '242 patent was assigned to American Pacemaker Corporation in 1975 and then to Medtronic in 1979. Berkovits joined Medtronic as Director of its New England Research Center in 1975.

Nealon and Rackman have represented Telectronics in this patent dispute from its outset. As attorneys for Telectronics, they now challenge the validity of the '242 patent. Medtronic contends that their representation of Telectronics is contrary to the ethical requirements of Canons 4, 5, 7 and 9 of the Code of Professional Responsibility of the American Bar Association. Medtronic claims the status of "former client" for itself, as assignee of the '242 patent, and for its employee, Berkovits, the inventor of the '242 patent, who was employed by AO when the patent was prosecuted.

### Procedural History

On September 10, 1985, the Hon. Leonard Bernikow, United States Magistrate, of this Court, acting pursuant to 28 U.S.C. § 636, issued a Report and Recommendation ("Report") with regard to Medtronic's motion to disqualify. In his Report, Magistrate Bernikow recommended that Medtronic's motion to disqualify be denied, subject to the condition that Telectronics would not raise an issue of fraud or misconduct regarding the prosecution of the '242 patent and that Telectronics would restrict its proof of obviousness at trial in the manner set forth in the Report. See Report at 30–33. Medtronic subsequently filed objections to Magistrate Bernikow's Report, to which Telectronics responded and to which Medtronic replied.

By Order dated May 7, 1986, this Court remanded Medtronic's motion to disqualify to Magistrate Bernikow for further consideration in light of the Federal Circuit's decision in Sun Studs, Inc. v. Applied Theory Assocs., 772 F.2d 1557 (Fed.Cir.1985). On May 19, 1986, Magistrate Bernikow issued a Report and Recommendation ("Re-

port after Remand") in which he adhered to his prior recommendation that Medtronic's motion to disqualify counsel be denied. Medtronic subsequently filed objections to Magistrate Bernikow's Report after Remand, to which Telectronics responded. With respect to all of Medtronic's objections to Magistrate Bernikow's Report and his Report after Remand, this Court conducted a *de novo* review of the entire record, and on September 8, 1986, adopted the findings and recommendations contained in Magistrate Bernikow's Report and his Report after Remand, in their entirety.

Pursuant to 28 U.S.C. § 1292(b), Medtronic now brings this Request for Certification to the Court of Appeals for the Federal Circuit of this Court's Order dated September 8, 1986 (the "September 8 Order").

### Legal Discussion

■ Disqualification orders are inherently interlocutory and therefore not immediately appealable. In *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379, 101 S.Ct. 669, 676, 66 L.Ed.2d 571 (1981), the Supreme Court held that a federal district court's order denying a motion to disqualify counsel for the opposing party in a civil case is not a final decision, within the meaning of 28 U.S.C. § 1291, that is immediately appealable. More recently, the Supreme Court held that disqualification orders in civil cases are not "collateral orders subject to appeal as 'final judgments' within the meaning of 28 U.S.C. § 1291." *Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 105 S.Ct. 2757, 2766, 86 L.Ed.2d 340 (1985). Thus, certification of the September 8, 1986 Order for permissive appeal is the only viable procedural route available to Medtronic, other than awaiting appeal from a final judgment on the merits.[1]

■ "Section 1292(b) authorizes certification of *orders* for interlocutory appeal,

not certification of *questions*." *Isra Fruit Ltd. v. Agrexco Agricultural Export Co.*, 804 F.2d 24, 25 (2nd Cir.1986) (citations omitted) (emphasis in original). To certify an order for immediate appellate review, the Court must find that the order (1) "involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation...." 28 U.S.C. § 1292(b). The Court finds that the September 8 Order meets said criteria.

In certifying the September 8 Order for immediate appellate review, the Court is mindful that § 1292(b) "is to be used only in exceptional cases where an intermediate appeal may avoid protracted and expensive litigation and is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." *Mazzella v. Stineman*, 472 F.Supp. 432, 436 (E.D.Pa.1979) (quoting *Milbert v. Bison Laboratories, Inc.*, 260 F.2d 431, 433 (3d Cir.1958). Furthermore, "[c]ertification must be strictly limited to the precise conditions in the law, and the question must arise in a sufficiently developed factual context to 'sharply define the legal issues raised.'" *Arnett v. Gerber Scientific, Inc.*, 575 F.Supp. 770, 771 (S.D.N.Y.1983) (citations omitted). Each of the statutory criteria as they pertain to the September 8 Order are discussed *seriatim*.

### Controlling Question of Law

"There is no doubt that a question is 'controlling' if its incorrect disposition would require reversal of a final judgment for further proceedings...." 16 Wright, Miller, Cooper & Gressman, Federal Practice and Procedure: Jurisdiction § 3930 (1977 & Supp.1986). In the instant case, the same lawyers who drafted and prosecuted the patent application at issue are

---

1. Medtronic could possibly proceed by means of prerogative writ under the All Writs Statute (28 U.S.C. § 1651). However, such extraordinary writs are historically known to be sparingly granted. Also, some authorities suggest that such extraordinary writs are obtainable only after the permissive appeal procedure of 28 U.S.C. § 1292(b) is exhausted. *Watkins v. Watkins*, 260 F.2d 548 (5th Cir.1958); *Allstate Ins. Co. v. United States District Court*, 264 F.2d 38, 39–40 (6th Cir.1959).

now leading both the factual and legal efforts to undo the results of that prior representation. The Court is of the opinion that trial on the issue of validity and infringement of the '242 patent may be tainted by the adverse representation of the attorneys who drafted and prosecuted the '242 patent. If Medtronic were to appeal successfully the September 8 Order after a final judgment, further proceedings would surely follow.

Broadly framed, the controlling question of law presented by this Certified Order is the following:

> Whether, consistent with the Code of Professional Responsibility of the American Bar Association or the Model Rules of Professional Conduct, a patent attorney can work with a corporate inventor to draft or prosecute a patent application to issuance of a patent and subsequently, despite the objection of both the corporate inventor and a later assignee of the patent, represent interests seeking to invalidate or narrowly construe the selfsame patent.

Memorandum in Support of Medtronic's Request for Certification of Order dated September 8, 1986 at 3 ("D. Memo."). Medtronic persuasively argues that the above question, answered in the affirmative, "will have a chilling effect upon the intimate, usually candid, forthright working relationship which normally exists between an inventor and his attorney." D. Memo. at 3. Moreover, the ramifications of this issue are of immense importance to the patent bar, to corporate inventors, to entities concerned about the alienability of patent interests, and to the interests of both the American Bar and the American public in upholding public confidence in the legal system.

### Substantial Ground for Difference of Opinion

Disqualification is procedural in nature and therefore is to be "reviewed under the law of the particular regional circuit court where appeals from the district court normally would lie." *Sun Studs, supra,* 772 F.2d at 1566 (citing *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1574–75 (Fed.Cir.1984)). There is no authority within this Circuit which directly addresses the issue at bar. However, in a factual situation similar to the underlying action, the Court of Appeals for the Federal Circuit in *Sun Studs* reviewed, under the law of the Ninth Circuit, an Oregon district court's disqualification of two law firms. Where no controlling Ninth Circuit precedent could be found, the Court looked to district court decisions from other Circuits, *see id.* at 1567, and to general principles of agency law. *See id.* at 1568. There exists substantial ground for difference of opinion regarding the proper application of the Federal Circuit's reasoning in *Sun Studs* to this Court's September 8 Order.

*Sun Studs* was an action for infringement of three patents and breach of contract. Applied Theory Associates, Inc. ("ATA"), the defendant, denied infringement and contended that the patents at issue were invalid. The portion of *Sun Studs* that is relevant to the September 8 Order concerns the motions of both parties to disqualify each other's counsel. ATA's counsel was the Kolisch firm, and counsel for Sun Studs, Inc. ("Sun Studs") was the Chernoff firm.

One of the patents at issue, the '065 patent, was prepared by the Kolisch firm, prosecuted for Howard C. Mason Associates, Inc., and assigned to Sun Studs several years after it was issued. Kolisch later purported to represent defendant ATA, and the disqualification of Kolisch was affirmed by the Federal Circuit. In so affirming, the Court stated:

> [W]e do not believe *any* court would hold that it is within the bounds of propriety to permit a law firm to assist a client in obtaining a patent which was equitably owned by another and then to lead the attack against the patent's validity once it is transferred to its rightful owner. *Accord, Hooper v. Steelplank Corp.,* 215 USPQ 829 (E.D.Mich.1981). While the Kolisch firm is not taking a position adverse to Mason's present interest, any attack on the patent is totally contrary to its work for Mason as an inventor which at the time inured to Sun Studs' benefit.

*Sun Studs, supra,* 772 F.2d at 1567 (emphasis added). The Kolisch firm's position with respect to the '065 patent is similar to that of Rackman and Nealon in the case at bar. As did Kolisch, they are attempting to undo the results of their prior representation in pursuing the interests of a new client.

Regarding the '579 patent at issue in *Sun Studs,* however, the Federal Circuit reversed the disqualification of the Chernoff firm. In rejecting the argument that there was a prior attorney-client relationship between the inventor and Chernoff, the Federal Circuit stated:

> [I]t is routine for an inventor to execute [a patent] application appointing the attorneys who prepared the application at the direction of the party to whom the application must be assigned and on whose behalf it will be prosecuted. The choice of attorneys, like the filing, is a decision by the assignee, not the inventor.
>
> ... Where the former relationship between the inventor and the patent counsel was solely technical in nature, and where the patent counsel in the former relationship was chosen by and at all times was working on behalf of the company rather than the inventor, it should not serve as automatic disqualification that the defendant is the inventor or a company with which he is associated.

*Id.* at 1568 (footnote omitted)[2].

In essence, Telectronics submits that the former relationship between Berkovits and Rackman and Nealon regarding the prosecution of the '242 patent "was solely technical in nature." *Id.* Subject to the restrictions of the September 8 Order, Telectronics argues that its counsel are barred from using information gained through their prior representation of Berkovits and AO that would give them an unfair advantage in arguing invalidity and non-infringement of the '242 patent.

The argument against disqualification of Telectronics' counsel centers on the assumption that no attorney-client relationship existed between Berkovits and Rackman or Nealon. It is undisputed that Rackman and Nealon were appointed by Berkovits to prosecute the '242 patent, but that this appointment was made at the direction of AO, the original assignee of the '242 patent. Nevertheless, courts have held that, whether or not an attorney-client relationship exists, "one who assists an inventor in preparing a patent application is quite likely to acquire from the inventor information that could be quite useful in preparing an attack on the validity of the patent...." *Hooper v. Steelplank, supra,* 215 USPQ at 832 (citing *Levin, supra,* 416 F.Supp. at 884).

The substantial ground for difference of opinion regarding the September 8 Order is, perhaps, best illustrated by two conflicting district court decisions: *Hooper v. Steelplank, supra,* 215 USPQ 829, and *SMI Indus. Canada Ltd. v. Caelter Indus., Inc.,* 586 F.Supp. 808 (N.D.N.Y.1984). *Hooper* generally supports Medtronic's position while *SMI* generally supports Telectronics' position.

Notably, in *Sun Studs,* the Federal Circuit adopted, and cited with approval, the reasoning articulated in *Hooper* with respect to attorney disqualification in patent-based disputes. However, Telectronics argues that the instant case is closer to *SMI,* where the movant inventor sought disqualification because its adversary's law firm challenged the validity and ownership of patents and trademarks which it had originally helped to secure. *Id.* at 817. Denying the motion for disqualification, the Court stated:

> instructive of the following proposition: "[i]n most circumstances an attorney may not represent the alleged infringer over the objection of his former client, the patentee." *Id.* at 884–85. This statement generally supports Medtronic in the instant case, while the latter passage from *Sun Studs* generally supports Telectronics.

**2.** In footnote 8, *id.,* the Court cites *Levin v. Ripple Twist Mills, Inc.,* 416 F.Supp. 876 (E.D.Pa. 1976) as "instructive" of the proposition quoted above. However, in *Levin,* the movant inventor was himself an attorney and the issue of patent validity had been removed from issue. Therefore, the wisdom to be gleaned from *Levin* has limited application. Furthermore, *Levin* is also

[The] challenges under Canon 9 are a function of the mistaken belief that the [law] firm is now taking a position with respect to the patents and trademarks which is contrary to the position taken during the procurement of these properties.

With respect to the patent issues in this case, defendant is merely arguing that the patents may be invalid based upon newly discovered art whose existence was not known before or during the pendency of the patent application.... [H]ad these these prior art references been known to the [law] firm prior to the issuance of the patent, both the applicant and the firm would have been duty bound to disclose such information to the Patent Office.... There is no suggestion here that this information was available to either the applicant or the [law] firm during the pendency of the patent application.

*Id.* at 818. Similarly, Telectronics claims that validity of the '242 patent is challenged here solely on the basis of "newly discovered art whose existence was not known before or during the pendency of the patent application." *Id.* Furthermore, Telectronics has represented that it does not claim "that this information was available to ... the applicant ... during the pendency of the patent application." *Id.*

Medtronic claims that Telectronics has gained an unfair advantage through access to privileged information possessed by its attorneys through their prior representation. "Who better would know and be able to recall the inventor's theories, his thinking as to the scope of his invention and why it is patentable over prior art than the attorneys?" Medtronic's Opposition to Magistrate Bernikow's Report after Remand at 5. Telectronics claims that no specifics of the alleged unfair advantage have been set forth. However, "[t]o disqualify an attorney a court need not require proof that he or she actually had access to or received privileged information while representing the client in a prior case." *Papst Motoren GMbH & Co. KG v. Kanematsu–Goshu Inc.*, 629 F.Supp. 864, 875 (S.D.N.Y.1986). Rather, the Second Circuit adheres to the "substantial relationship" test enunciated by Judge Weinfeld in *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265 (S.D.N.Y.1953).

[W]here any substantial relationship can be shown between the subject matter of a former representation and that of a subsequent adverse representation, the latter will be prohibited.

. . . .

... [T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

*Id.* at 268–69 (citations omitted).

Whether "former client" status may be accorded to Berkovits is uncertain. However, to permit the same attorneys who had unrestricted access to the inventor, his records, his knowledge and strategy and who undertook the extensive collaboration needed to draft and prosecute his patent application to lead the attack to undermine those efforts and invalidate the resulting patent may taint the underlying trial and damage the integrity of the judicial process.

The Second Circuit generally takes a restrained approach to issues of attorney disqualification. In *Board of Education of New York City v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979), the Court stated that within the Second Circuit:

[W]ith rare exceptions disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests in violation of Can-

ons 5 and 9 of the Code of Professional Responsibility undermines the Court's confidence in the vigor of the attorney's representation of his client ... or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, for example, in violation of Canons 4 and 9, thus giving his client an unfair advantage.

*Id.* at 1246 (citations and footnotes omitted).

This Court has stated that the "[m]ere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion. Rather, the motion will be granted only if the facts present a real risk that the trial will be tainted." *United States Football League v. National Football League,* 605 F.Supp. 1448, 1452 (S.D.N.Y.1985) (citation and footnote omitted). In the absence of Second Circuit precedent which directly addresses the issue at bar, the Court turns to the Court of Appeals for the Federal Circuit, having exclusive appellate jurisdiction over patent-based disputes, for authoritative guidance on this issue of singular importance to the patent bar.

### Materially Advance the Ultimate Termination of the Litigation

"The requirement that an appeal [under 28 U.S.C. § 1292(b)] may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." Federal Practice and Procedure, *supra,* at § 3930. A reversal of the September 8 Order would require Telectronics to retain new counsel for all further proceedings involving the '242 patent. Certification will eliminate the possibility of a time-consuming and expensive retrial due to attorney disqualification following a trial on the merits. On the one hand, disqualification motions "inevitably cause delay" *Nyquist, supra,* 590 F.2d at 1246, by separating a client from counsel of his choice. On the other hand, no pretrial order or requests to charge have yet been filed in this case. An immediate appeal may thus avoid

a great deal of pretrial effort which, to a large extent, would have to be duplicated in the event of disqualification after final judgment.

### Conclusion

For the reasons stated herein, Medtronic's Request for Certification of the September 8, 1986 Order to the Court of Appeals for the Federal Circuit is granted. The September 8, 1986 Order is amended this day to provide certification as indicated in 28 U.S.C. § 1292(b).

Medtronic is hereby permitted to petition for permission to appeal the September 8, 1986 Order in the Court of Appeals for the Federal Circuit within ten (10) days hereof. The pendency of this appeal in the Federal Circuit shall not stay proceedings in this Court.

SO ORDERED.