PRIMAVERA FAMILIENSTIFUNG,
Plaintiffs,

v.

David J. ASKIN, et al., Defendants.

ABF Capital Management,
et al., Plaintiffs,

v.

Askin Capital Management,
L.P., et al., Defendants.

Granite Partners, L.P.,
et al., Plaintiffs,

v.

Donaldson, Lufkin & Jenrette
Securities Corporation, et
al., Defendants.

Montpellier Resources Limited,
et al., Plaintiffs,

v.

Askin Capital Management,
L.P., et al., Defendants.

Richard Johnston, as Trustee for The
Demeter Trust, et al., Plaintiffs,

v.

Askin Capital Management,
L.P., et al., Defendants.

Bambou Inc., et al., Plaintiffs,

v.

David J. Askin, et al., Defendants.

AIG Managed Market Neutral
Fund, et al., Plaintiffs,

v.

Askin Capital Management,
L.P., et al., Defendants.

Nos. 95 CIV 8905 RWS, 97 CIV 1856
RWS, 98 CIV 7494 RWS, 96 CIV 2978
RWS, 97 CIV 4335 RWS, 96 CIV 7874
RWS, 98 CIV 6178.

United States District Court,
S.D. New York.

May 7, 2001.

Friedman Kaplan & Seiler by Eric Seiler, Robert J. Lack, Katherine L. Pringle, Lee D. Sossen, New York City, Berlack, Israels & Liberman by Steven E. Greenbaum, Scott M. Berman, Anne M. Cunningham, Melissa A. Sarubbi, New York City, for Granite Partners.

Bragar Wexler Eagle & Morgenstern by Peter D. Morgenstern, Paul D. Wexler, Lawrence P. Eagel, Lisa K. Eastwood, New York City, for Montpellier Resources Limited.

Morgan, Lewis & Bockius by Catherine A. Ludden, New York City, for Donaldson, Lufkin & Jenrette Securities Corp.

Brown & Wood by A. Robert Pietrzak, Andrew W. Stern, Madeleine J. Dowling, Jonathan J. Brennan, Kimberly A. Johns, New York City, for Merrill Lynch, Pierce, Fenner & Smith Inc.

Gold Bennett Cera & Sidener by Solomon B. Cera, San Francisco, CA, Bernstein Litowitz Berger & Grossmann by Jeffrey A. Klafter, New York City, for Primavera Familienstiftung, Bambou, Inc., Loukoum Inc., Samta Investment Inc., and Hubert Looser.

Swidler Berlin Shereff Friedman by David S. Hoffner, New York City, for Askin Capital Management, L.P.

## OPINION

SWEET, District Judge.

Defendant Donaldson, Lufkin & Jenrette Securities Corporation ("DLJ") has moved for an order certifying an interlocutory appeal to the Second Circuit in six related securities fraud actions entitled *Primavera Familienstiftung v. Askin*, No. 95 Div. 8905 (the "Primavera Action"), *ABF Capital Mgmt. v. Askin Capital Mgmt.*, No. 96 Civ. 2978 (the "ABF Action"), *Montpellier Resources Ltd. v. Askin Capital Mgmt.*, No. 97 Civ. 1856 (the "Montpellier Action"), *Johnston v. Askin Capital Mgmt.*, 97 Civ. 4335 (the "Johnston Action"), *Bambou Inc. v. Askin*, No. 98 Civ. 6178 (the "Bambou Action"), and *AIG Managed Market Neutral Fund v. Askin Capital Mgmt.*, No. 98 Civ. 7497 (the "AIG Action"), pursuant to 28 U.S.C. § 1292(b).[1] For the reasons set forth below, the motion is denied.

### The Parties

The parties to the ABF, Primavera, Montpellier, and AIG Actions are set forth in *ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F.Supp. 1308 (S.D.N.Y. 1997) (*"ABF I"*), *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405 (S.D.N.Y. 1998), and *AIG Managed Market Neutral Fund v. Askin Capital Mgmt., L.P.*, 197 F.R.D. 104 (S.D.N.Y.2000). The parties to the Johnston and Bambou Actions, while not separately set forth in this Court's previous opinions, were, like the plaintiffs in the other actions, shareholders and/or limited partners in the same hedge funds, as described in *Primavera Familienstiftung v. Askin*, 130 F.Supp.2d 450 (S.D.N.Y.2001). Familiarity with these previous opinions is presumed.

### Background

In an opinion dated February 5, 2001 (the "Summary Judgment Opinion"), this Court denied in part and granted in part several summary judgment motions in the instant actions, as well as in a seventh related action entitled *Granite Partners, L.P. v. Bear Stearns & Co., Inc.*, No. 96 Civ. 7874 (the "Funds Action"). *See Primavera*, 130 F.Supp.2d 450.

On February 22, 2001, Kidder filed the instant motion, and on March 1, 2001, DLJ joined in that motion. The plaintiffs in the ABF Action (the "ABF Plaintiffs") opposed the motion, and subsequently the plaintiffs in the other five actions joined that opposition. The matter was marked fully submitted on March 21, 2001.

### Discussion

#### I. The Standard For Certification Under § 1292(b)

■ Section 1292(b) provides that a district court may certify an interlocutory order for appeal if it is of the opinion that (1) the order "involves a controlling question of law"; (2) "as to which there is substantial ground for difference of opinion," and (3) an immediate appeal "may materially advance the ultimate termination of the litigation". 28 U.S.C. § 1292(b). In considering a request for certification, the district court must carefully assess whether each of the three conditions for certification is met. *See German v. Federal Home Loan Mortgage Corp.*, 896 F.Supp. 1385, 1398 (S.D.N.Y. 1995); *see also Gottesman v. General Motors Corp.*, 268 F.2d 194, 196 (2d Cir.1959) (certification to be "strictly limited to the precise conditions stated in the law"). The determination of whether Section 1292(b) certification is appropriate under the

---

1. This motion was initially made by defendant Kidder, Peabody & Co. Incorporated ("Kidder") and joined in by DLJ (collectively, the "Brokers"). Kidder subsequently withdrew from the motion.

above standards is in the discretion of the district court. *See Ferraro v. Secretary of U.S. Dept. of Health & Human Servs.*, 780 F.Supp. 978, 979 (E.D.N.Y.1992); 16 Charles A. Wright *et al.*, *Federal Practice and Procedure* § 3929 (1977 & Supp.1996).

■ Interlocutory appeals under Section 1292(b) are an exception to the general policy against piecemeal appellate review embodied in the final judgment rule. Since the statute was enacted in 1958, the Second Circuit has repeatedly emphasized that a district court is to "exercise great care in making a § 1292(b) certification." *Westwood Pharmaceuticals, Inc. v. National Fuel Gas Dist. Corp.*, 964 F.2d 85, 89 (2d Cir.1992); *see also Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir.1990). Certification is only warranted in "exceptional cases," where early appellate review "might avoid protracted and expensive litigation." *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 690 F.Supp. 170, 172 (S.D.N.Y.1987); *see also German*, 896 F.Supp. at 1398. Section 1292(b) was not intended "to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation" *Telectronics*, 690 F.Supp. at 172, or to be a "vehicle to provide early review of difficult rulings in hard cases." *German*, 896 F.Supp. at 1398; *see also Abortion Rights Mobilization, Inc. v. Regan*, 552 F.Supp. 364, 366 (S.D.N.Y.1982); *McCann v. Communications Design Corp.*, 775 F.Supp. 1506, 1534 (D.Conn.1991).

■ The institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b). *See Forsyth v. Kleindienst*, 599 F.2d 1203 (3d Cir.1979). The efficiency of both the district court and the appellate court are to be considered, and the benefit to the district court of avoiding unnecessary trial must be weighed against the inefficiency of having the Court of Appeals hear multiple appeals in the same case. *See Harriscom*

*Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir.1991); *see generally* 16 Charles A. Wright *et al.*, 16 *Federal Practice and Procedure* § 3930 (2d ed.1996).

■ In determining whether a controlling question of law exists the district court should consider whether: reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases. *See Klinghoffer*, 921 F.2d at 24–25; *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 54–55 (S.D.N.Y. 1998).

■ Immediate appeal may be considered to advance the ultimate termination of the litigation if " 'appeal promises to advance the time for trial or to shorten the time required for trial.' " *In re Oxford*, 182 F.R.D. at 53 (*quoting* 16 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 3930 at 432 (2d ed.1996)). However, the advancement must be "material[ ]," 28 U.S.C. § 1292(b); *see In re Duplan*, 591 F.2d at 148 n. 11 (" 'The critical requirement is that [an interlocutory appeal] have the potential for substantially accelerating the disposition of the litigation.' ") (*quoting* 9 James Wm. Moore *et al.*, *Moore's Federal Practice*, ¶ 110.22[2] at 260 (1975)).

■ Although technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected. *See The Duplan Corp. v. Slaner*, 591 F.2d 139, 148 n. 11 (2d Cir.1978); *Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.*, 830 F.Supp. 1549, 1557 (D.N.J.1993); 16 Charles A.

Wright *et al.*, *Federal Practice and Procedure* § 3930 (2d ed.1996).

## II. *Certification Is Not Appropriate*

### A. *The Matters As To Which Certification Is Sought*

■ DLJ seeks certification to the Second Circuit Court of Appeals of twö questions: (1) "whether New York law recognizes a non-derivative claim by equity security holders based on so-called fraudulent maintenance"; and (2) "whether such a tort, if it does exist, should extend to cover more attenuated aiding and abetting liability."

■ As a preliminary matter, it is noted that although certification is sought as to two questions of New York law, § 1292(b) authorizes the certification of orders, not questions. *Isra Fruit Ltd. v. Agrexco Agricultural Export Co. Ltd.*, 804 F.2d 24, 25 (2d Cir.1986). If a district court certifies an order for interlocutory appeal, and if the circuit court accepts certification, *see id.* at 26 (declining to take interlocutory appeal of order certified by district court), then the circuit court may certify questions of state law to the New York Court of Appeals, *see, e.g., Liriano v. Hobart Corp.*, 132 F.3d 124, 132–33 (2d Cir.1998) (formulating and certifying question of New York law to New York Court of Appeals). Of course, insofar as it is helpful to the circuit court if "the district judge frames the controlling question(s) that the judge believes is presented by the order being certified," *Isra Fruit*, 804 F.2d at 25, it is helpful to the district court if the parties seeking certification do so as well.

The motion is directed at this Court's holding in the Summary Judgment Opinion that the Investors "may assert a fraud claim based on the theory that they were induced to make and/or retain their investments." *Primavera*, 130 F.Supp.2d at 495. The Brokers urged then, and DLJ maintains, that New York law does not recognize a non-derivative claim by equity security holders for fraudulent inducement to retain an investment—i.e., "fraudulent maintenance"—and such claims must be dismissed.[2] The issue of whether a claim could lie for fraudulent inducement to retain, as compared with to make, an investment, was first broached by the Brokers at a much earlier stage in this litigation, when they moved to dismiss the ABF Action on the pleadings. *See ABF I*, 957 F.Supp. at 1328–29. This issue increased in importance at the summary judgment stage, however, because "discovery [in this litigation had] reveal[ed] that some Investors may not, or could not, have been induced to make their initial investments by the alleged misrepresentations. The most obvious example is the small group of Investors who invested before Askin arrived in September 1991." *Id.* at 493.

### B. *Interlocutory Appeal Would Not Materially Advance The Termination Of This Litigation*

Although advancement of the termination of the litigation is the third of the statutory criteria, it will be addressed first because it is here that the motion most clearly falters.

There remain approximately fifty plaintiffs in the Investor Actions, subsequent to

2. The Brokers also raised the argument, albeit primarily in a footnote in Kidder's summary judgment brief, that even if such a tort existed under New York law it would not extend to an aiding and abetting claim, which is the nature of the claim against the Brokers. *See* Kidder SJ Mem. at 82 and n. 53; DLJ SJ Mem. at 58–59, DLJ SJ Reply Mem. at 49 (though not expressly adopting Kidder's contention as to aiding and abetting liability, adopting more generally Kidder's arguments set forth as to why fraudulent maintenance claims must be dismissed).

the order of summary judgment against four plaintiffs on statute of limitations grounds. *See Primavera,* at 515–20 (granting summary judgment in favor of Kidder against four time-barred plaintiffs); *Primavera Familienstifung v. Askin,* 137 F.Supp.2d 438 (2001), Opinion of April 9, 2001 (granting summary judgment in favor of DLJ against same time-barred plaintiffs).[3]

DLJ contends that certification would materially advance the ultimate termination of this litigation because whether this Court's holding regarding fraudulent maintenance claims is correct determines whether certain plaintiffs and claims may remain in this litigation. Thus, if certification is granted, and the holding reversed, then the subsequent trial would, according to DLJ, be much simplified. Conversely, if the holding is affirmed, then the risk of needlessly trying certain claims will have been avoided. Finally, DLJ urges, if trial is allowed to proceed and DLJ subsequently obtains reversal through the ordinary course of post-trial appellate review, there might even be a need for a second trial.

A handful of the remaining plaintiffs made all of their investments even before Askin's arrival at the Funds in 1991, let alone before ACM's creation in 1993, and, therefore, would be unable to sustain their claims if they were not able to proceed on the theory that they were later induced by fraudulent misrepresentations to retain those investments.[4] The elimination of a small number of plaintiffs out of a total of approximately fifty, however, does not satisfy the standard of materially advancing the ultimate termination of this litigation. *See German,* 896 F.Supp. at 1398 (interlocutory appeal would not materially advance ultimate termination of litigation as "numerous claims and other defendants ... would be unaffected by a favorable ruling on ... issues" as to which certification sought).[5]

As for the theory that certification might avoid the need for a second trial, this view is not well delineated but it is averred that the "[t]his [need for a second trial] will be especially true to the extent Plaintiffs are allowed to use their fraudulent maintenance theory to avoid their burden of showing individual reliance upon misrepre-

3. The summary judgment opinion also ordered summary judgment for Kidder as to claims based on investments in the Quartz Hedge Fund. *See Primavera,* at 520–21. Each of the Quartz Investors, however, also invested in one or both of the Granite funds and, therefore, remain plaintiffs in this litigation with respect to claims based on those other funds.

4. The ABF Plaintiffs contend that only two plaintiffs would be affected, because only two ABF Plaintiffs—the Employee Retirement Income Plan of Minnesota Mining and Manufacturing Company ("3M") and David Chemerow ("Chemerow")—are in this category. There are four additional, non-ABF Plaintiffs—Lionel N. Sterling ("Sterling"), Antaeus Enterprises ("Antaeus"), the Demeter Trust ("the Demeter Trust"), and Robert F. Johnston ("Johnston") who would be affected in the same way. Two of these four plaintiffs,

however, have already had summary judgment ordered against them on statute of limitations grounds, i.e., Sterling and the Demeter Trust. *See Primavera,* at 514–15. Although Sterling has recently moved for reinstatement of his claims on the grounds of new evidence, DLJ opposes that motion.

5. It is also contended that permitting a fraudulent maintenance theory means that plaintiffs who invested before ACM's creation in January 1993 will be able to pursue their claims even though the complaint alleged misconduct beginning in 1993, and that this is improper. However, if a fraudulent maintenance claim is a proper claim under the law—as was concluded in *Primavera,* 130 F.Supp.2d 450, then there is no improper expansion of DLJ's potential liability beyond the parameters of the complaint. Rather, this is simply the result of applying this rule to the facts of this case.

sentations known to and substantially assisted by each defendant with respect to each and every investment, and of demonstrating the harm they suffered was proximately caused by each defendant's actions."[6] The niceties of trial management in the Investor Action should not be prejudged at this juncture. Suffice it to say that, however daunting the task of trying these actions may be, DLJ fails to argue convincingly that the sorts of problems anticipated cannot be addressed through a properly crafted pre-trial order and techniques such as a special verdict form or even alternative verdicts. *See Isra Fruit*, 804 F.2d at 26 (rejecting contention that reversal of certain claims on appeal "would require retrial of remaining claims .... [because] [v]arious techniques are available to avoid that prospect, including special verdicts ... or even alternative verdicts, if damage computation should be determined to vary under different statutory claims").

Thus, for the reasons explained above, DLJ has not shown that certification for interlocutory appeal would materially advance the ultimate termination of this litigation. Indeed, given the amount of time required for the multiple reviews sought, the actual result would be to further prolong what has already been a protracted litigation.

As § 1292(b) requires that each of the three criteria be satisfied, denial of the motion would be appropriate even if the other two criteria were met. *See German*, 896 F.Supp. at 1398. However, certain observations will be made regarding those criteria.

With respect to the controlling question of law criterion, it is averred that the issues involved have "precedential value for a large number of cases." *SEC v.*

*Credit Bancorp, Ltd.*, 103 F.Supp.2d 223, 227 (S.D.N.Y.2000). Although, as noted previously, in many cases the controlling issue of law question is closely connected to the material advancement of the litigation question, *see Duplan Corp.*, 591 F.2d at 148 n. 11, formulated in this manner the two considerations are more distinct. However, DLJ's forecasting as to the precedential value of this Court's holding is somewhat speculative.

DLJ urges that in the Summary Judgment Opinion this Court took a radically expansive view of shareholder liability and that the decision therefore presents critical issues of New York public policy that could affect the entire securities industry. Moreover, according to DLJ, this ruling will encourage shareholders to file suits that, it is implied, would not have ensued otherwise, and the precedent represented by this Court's decision will impact those cases. In addition, since DLJ maintains that the New York courts have not themselves recognized such a cause of action, it is asserted that plaintiffs will flock to the federal courts. Even assuming *arguendo* that the DLJ's dramatic characterization of this Court's ruling were correct, it is rather speculative to say that the ruling has precedential value for a large number of cases when those cases have yet to be brought.

Also, DLJ relies in part on a Second Circuit decision in which the court certified an important question of New York insurance law to the New York Court of Appeals due to concern that litigants might "rely on our analysis ... only to find upon eventual resolution of the question by the courts of New York" that the Second Circuit was in error. *Rosner v. Metro. Prop. and Liab. Ins. Co.*, 236 F.3d 96, 103–04 (2d

---

6. Although this statement was made in Kidder's briefing, *see Kidder Reply Mem.* at 3–4, like other arguments equally applicable to DLJ it is considered herein due to DLJ's joinder in the motion.

Cir.2000). Without making any attempt at false modesty, it is noted that the broader effects of litigant reliance on a decision regarding New York law by the Second Circuit Court of Appeals must, necessarily be less where the decision is rendered by a federal district court. Nor does the posture of this case make it more significant than it would be otherwise. *Cf., e.g., In re Air Crash Off Long Island, New York, On July 17, 1996,* 27 F.Supp.2d 431, 434 (S.D.N.Y.1998) (certifying issue for interlocutory appeal where ultimate termination of multidistrict litigation would be materially advanced).

Finally, it will be assumed *arguendo* that there are substantial grounds for difference of opinion regarding the issue, as well as significant policy questions at stake. Nor is this Court unaware of the fact that the relevant state court authority consists of relatively old, lower court opinions. *See McCarthy v. Olin Corp.,* 119 F.3d 148, 157–58 and n. 1 (2d Cir.1997) (Calabresi, J., dissenting) (criticizing federal courts' reluctance to certify questions to state courts where there is no definitive ruling from state high court or existing authority is "very old and has been ignored in recent years").[7]

In the end, however, what is left are intellectually challenging issues arising in a difficult and complex litigation, but not a situation warranting certification of an interlocutory appeal under § 1292(b). *See German,* 896 F.Supp. at 1398 (certification "is not intended as a vehicle to provide early review of difficult rulings in hard cases").

## C. *Prejudice To DLJ And Problems Of Proof*

DLJ also contends the fraudulent maintenance theory is radically different from the one articulated in the complaint, and that by recognizing such a claim the Court has imposed drastic and unwarranted problems of proof upon DLJ. First, says DLJ, the evidence will consist largely of a form of evidence which the Supreme Court has disfavored in federal securities fraud cases, namely, "uncorroborated oral evidence of many of the crucial elements of [a plaintiff's] claim." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 746, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). Second, DLJ urges, it will be unable to effectively defend themselves at trial because the scope of the discovery taken in this case, as limited by previous orders of this Court, did not encompass areas needed to litigate the fraudulent maintenance issue. These contentions, while they do not go to the § 1292(b) criteria, merit a brief discussion.

The claims for fraudulent inducement to make the investments will also depend heavily on oral evidence from the plaintiffs with respect to key elements, including reliance, an issue which is largely outside of the defendant's knowledge. The fact that testimonial evidence will be critical, however, does not dictate that the Investors will prevail. Indeed, the Court itself observed as to several plaintiffs that their testimonial evidence regarding inducement to make their investments was problematic, insofar as statements made in their declarations were not consistent with their deposition testimony. *See Primavera,* at 501–02.[8]

---

**7.** Of course, the Summary Judgment Opinion did not solely rely on these state court authorities, but also looked to more recent discussion by the Second Circuit of these and other state law decisions, as well as certain district court authority. *See Primavera,* at 493–494 (analyzing fraudulent maintenance issue).

**8.** As for the Supreme Court's decision in *Blue Chip,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539, without entering into a lengthier discussion, it is noted only that: the plaintiffs were mere offerees who had never actually purchased any stock, *see id.* at 725, 745–46, 95 S.Ct. 1917, though the Court's discussion went beyond that class of plaintiffs, *see id.* at

Thus, DLJ is not the only one with problems of proof. While it is not for this Court to develop a trial strategy for any one, there is no reason to think DLJ could not exploit at trial similar weaknesses in the testimonial evidence as to the fraudulent maintenance aspect of the Investors' claims. Contrary to the contention by DLJ, the "only possible evidence" which could cast doubt on self-serving testimony is not evidence of a particular plaintiff's "actions or inaction with other investments," DLJ Mem. at 2—an area of discovery which DLJ avers was, in hindsight, unduly limited.

Finally, the implication that a fraudulent maintenance theory is something that DLJ could not have anticipated having to defend against is somewhat odd given the Brokers' arguments and this Court's ruling four years ago when they moved to dismiss the ABF Action on the pleadings. *See ABF I*, 957 F.Supp. at 1328–29 (analyzing brokers' contention that fraudulent maintenance claim is distinguishable from fraudulent inducement claim and rejecting argument that former was not adequately pleaded). The Court assumed *arguendo* that there was a distinction between a claim for fraudulent inducement and a claim for fraudulent maintenance, and held that the ABF Plaintiffs had adequately stated a claim for the latter. *Id.* at 1329. Thus, the issue of whether a fraudulent maintenance claim is not new to this litigation, and was first raised by the Brokers.

Moreover, as discovery in these actions went forth, it should have been apparent that some Investors might find it difficult, or even impossible, to prove that they had been fraudulently induced to make their initial investments. Thus, although at the

time of *ABF I* "[i]t was not necessary . . . to deal with the issue of whether some Investors might not have been recipients of the alleged fraudulent misrepresentations at the time they invested," *Primavera*, at 494, this issue ought not to have come as a surprise. Finally, given the discussion in *ABF I*, 957 F.Supp. at 1328–29, and the complexities of the case law, *see Primavera*, at 495 (discussing cases), it was no foregone conclusion that the Brokers would prevail in their position on the legal question.

### Conclusion

Therefore, for the reasons set forth above, the motion for certification of an interlocutory appeal is denied.

It is so ordered.

---

742–43, 95 S.Ct. 1917, the Court was concerned not only about the difficulty of defending such actions but also about nuisance and harassment through the federal rules of discovery, *see id.* at 741, 95 S.Ct. 1917; and a

fraud claim under federal securities law is expressly limited to injuries "in connection with the purchase or sale of any security," 15 U.S.C. § 78j; 17 C.F.R. § 240.10b–5.