In re MANHATTAN INVESTMENT FUND LTD., et al., Debtors.

Helen Gredd, Chapter 11 Trustee for Manhattan Investment Fund Ltd., Plaintiff,

v.

Bear, Stearns Securities Corp., Defendant.

No. 01 Civ. 4379 NRB.

United States District Court, S.D. New York.

Dec. 20, 2002.

Harry S. Davis, Martin L. Perschetz, Michael L. Cook, New York City, for Bear, Stearns Securities Corp.

Helen Gredd, Daniel E. Reynolds, Carl G. Sussman, New York City, for Helen Gredd, Chapter 11 Trustee for Manhattan Investment Fund Ltd.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Defendant Bear, Stearns Securities Corp. ("Bear Stearns" or "defendant") moves pursuant to 28 U.S.C. § 158(a)(3) and Fed. R. Bankr.P. 8001(b) and 8003, for leave to appeal from an order of the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") dated October 7, 2002 (the "Order") which denied Bear Stearns' motion to dismiss Counts I and IV of the Complaint.[1] For the following reasons, defendant's motion is denied.

### BACKGROUND [2]

This case arises out of the bankruptcy of Manhattan Investment Fund, Ltd. (the "Fund"), an offshore hedge fund that operated from April 1996 to mid-January 2000. Michael Berger served as the investment manager and advisor for the Fund, through his wholly owned company Manhattan Capital Management, Inc. ("MCM").

The Fund's strategy was to short sell United States securities of technology companies on the theory that the companies were overvalued and their stock

1. The Complaint originally contained four counts. This Court previously dismissed Counts II and III. *See Bear, Stearns Securities Corp. v. Gredd,* 275 B.R. 190 (S.D.N.Y. 2002).

2. The following discussion does not constitute findings on any questions of fact, but merely attempts to provide the reader with a general understanding of the factual background to the instant motion.

prices would decline.[3] This strategy was a colossal failure, generating more than $394 million in net losses. As these losses accumulated, Mr. Berger began issuing false statements to investors that indicated that the Fund was profitable, and began paying off early investors with funds acquired from later investors.[4] The scheme eventually unraveled, however, and the Securities Exchange Commission sued Mr. Berger and the Fund for securities fraud, obtaining an asset freeze and the appointment of a Receiver. In the months that followed, the Receiver, Helen Gredd, caused the Fund and its investment advisor, to file voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Ms. Gredd was appointed Chapter 11 Trustee of the Fund and MCM.

At about the same in time, in March, 2000 a class-action lawsuit against Mr. Berger, Bear Stearns, and others was brought before Judge Denise Cote of this District. *See Cromer Fin. Ltd. v. Berger,* 137 F.Supp.2d 452, 472 (S.D.N.Y.2001) (dismissing the claims against Bear

Stearns pursuant to Federal Rule of Civil Procedure 12(b)(6)).[5]

On August 24, 2000, the United States Attorney for the Southern District of New York brought a criminal action against Mr. Berger, which charged that he committed securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934 by lying to his investors about the performance of the Fund. On November 27, 2000, Mr. Berger pled guilty to the charges against him. *See United States v. Berger,* 188 F.Supp.2d 307, 338 (S.D.N.Y. 2002) (denying Berger's motion to withdraw his guilty plea).

The Trustee then commenced this proceeding against Bear Stearns in the Bankruptcy Court on April 24, 2001. In her complaint, the Trustee sought to avoid, pursuant to section 548(a)(1)(A) of the Bankruptcy Code, three categories of transfers that were made to Bear Stearns in connection with the Fund's short selling activities during the last ten months of its operations.[6]

---

**3.** A short sale is a speculative transaction where a security not owned by the seller is sold in the hope that the price of the security will decline, permitting the seller to later repurchase the security ("cover") and make a profit. Typically, the seller borrows the security to be sold short from his broker and covers by later buying the identical stock and transferring it to his broker. While transactions of this type may be profitable if the price of the security declines, when the price of the security increases, the resulting losses may be substantial.

**4.** Such a business model is commonly called a "Ponzi" scheme, after Charles Ponzi, who is credited with inventing and implementing the scheme in 1919–20. *See generally Cunningham v. Brown,* 265 U.S. 1, 4, 44 S.Ct. 424, 68 L.Ed. 873 (1924) (discussing the "remarkable criminal financial career of Charles Ponzi"); *Merrill v. Abbott (In re Indep. Clearing House Co.),* 41 B.R. 985, 994 n. 12 (Bankr.D.Utah 1984) (collecting cases).

**5.** The Trustee was not a party to that action.

**6.** Despite allegations in the Complaint that Bear Stearns did not "act in good faith in accepting the cash and securities transferred to it" and that "Bear Stearns knew or should have known that by continuing to do business with Berger's Fund it was enabling a massive fraud to continue", *see* Compl ¶ 69, the Complaint did not accuse Bear Stearns of being a *direct* participant in the Ponzi scheme. Rather, because Bear Stearns acted as the Fund's prime broker, providing margin and stock lending services in connection with the Fund's short selling activities, the Trustee sought to recover these margin payments, short sale proceeds and the repayment of securities loaned to the Fund by Bear Stearns. The Complaint alleged that Mr. Berger made these payments to Bear Stearns with the specific intent to defraud the Fund's investors, entitling her to avoid those transfers pursuant to section 548(a)(1)(A) of the Bankruptcy Code. In relevant part, section 548(a)(1)(A) of the Bankruptcy Code, provides:

The trustee may avoid any transfer of an interest of the debtor in property, or any

In May 2001, Bear Stearns moved to withdraw the adversary proceeding from the Bankruptcy Court to the District Court, and on July 25, 2002 this Court granted Bear Stearns' motion to withdraw reference for the limited purpose of determining whether the Debtor had an interest in the alleged transfers subject to Counts II and III of the complaint. *See Bear Stearns v. Gredd,* 2001 WL 840187 (S.D.N.Y. July 25, 2001). Bear Stearns then moved before this Court to dismiss Counts II and III of the complaint on the grounds that the transfers sought to be avoided were not transfers of property in which the Fund had an interest. By Opinion and Order dated March 22, 2002 this Court granted Bear Stearns' motion, reinstated the reference, and remanded the remaining Counts [7] to the Bankruptcy Court for further proceedings. *See Bear, Stearns Securities Corp. v. Gredd,* 275 B.R. 190, 198 (S.D.N.Y.2002).

On May 10, 2002 Bear Stearns moved before the Bankruptcy Court to dismiss both remaining counts pursuant to Bankruptcy Rules 7009(b) and 7012(a) arguing *inter alia,* that the Trustee had not adequately alleged that the transfers were made with "actual intent" to defraud the Fund's creditors as required under § 548(a)(1)(A) of the Bankruptcy Code. Specifically, Bear Stearns argued that the

presumption of fraudulent intent that courts have applied to operators of Ponzi schemes should not be applied in this instance because the transfers at issue were made in connection with legitimate and fully disclosed trading, outside the realm of the Ponzi scheme.

By Decision and Order dated October 7, 2002, the Bankruptcy Court denied Bear Stearns' motion to dismiss Counts I and IV of the Trustee's Complaint. The Bankruptcy Court held that "by citing Berger's guilty plea and conviction coupled with the fact that margin payments were made in connection with a massive Ponzi scheme, the Trustee had sufficiently alleged facts pursuant to Bankruptcy Rules 7009(b) and 7012(a) to withstand Bear Stearns' motion to dismiss." Order at 14. In so holding, the Bankruptcy Court found that it was appropriate to apply a presumption of actual intent to defraud on the part of the Debtor "regardless of whether the payments were made to early investors or whether the debtor was engaged in a strictly classic Ponzi scheme." Order at 12.

Presently before the Court is Bear Stearns' motion pursuant to 28 U.S.C. § 158(a)(3) and Fed R. Bankr.P. 8001(b) for an order granting interlocutory leave

---

obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily ... *made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud* any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted....
11 U.S.C. § 548(a)(1)(A)(emphasis supplied). Count I of the Complaint sought to avoid $141.4 million in margin payments which Mr. Berger caused to be transferred to Bear Stearns from the Fund's account with the Bank of Bermuda. Count II sought to recover approximately $1.7 billion in short sale

proceeds generated by the sale of stock that the Fund borrowed from Bear Stearns and transferred to Bear Stearns to serve as part of the margin payments for the stock loaned to the Fund by Bear Stearns. Count III sought to recover approximately $1.9 billion worth of securities that were purchased with the short sale proceeds plus other monies in the Fund's margin account that were delivered to Bear Stearns to cover stock loans to the Fund. Count IV sought equitable subordination of any claim Bear Stearns might assert in the Fund's chapter 11 case to all other claims.

7. The Counts which remained were I and IV.

to appeal from Judge Lifland's denial of Bear Stearns' motion to dismiss Counts I and IV of the Trustee's Complaint.

## DISCUSSION

### I. The Legal Standard for Interlocutory Appeal

■ A district court's jurisdiction to review appeals from bankruptcy court orders is governed by 28 U.S.C. § 158, which provides in relevant part:

The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders and decrees; ... *and, with leave of the court from interlocutory orders and decrees,* of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

28 U.S.C. § 158(a)(emphasis supplied). In deciding whether to entertain an appeal from an interlocutory order of a bankruptcy judge, district courts generally have applied the standards of 28 U.S.C. § 1292(b). *See e.g. Urban Retail Properties v. Loews Cineplex Entertainment,* 2002 WL 535479 * 4 (S.D.N.Y. Apr. 9, 2002) ("The standard for determining whether leave to appeal from an interlocutory bankruptcy order should be granted ... is given by 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district courts to the courts of appeal.") Under § 1292(b), a party seeking certification must demonstrate that the disputed ruling: (1) involves a controlling question of law; (2) as to which there are substantial grounds for difference of opinion; and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b) [8]; *see also Klinghoffer v. S.N.C. Achille Lauro,* 921 F.2d 21, 23 (2d Cir. 1990); *German v. Federal Home Loan Mortgage Corp.,* 896 F.Supp. 1385, 1398 (S.D.N.Y.1995).

■ The Second Circuit has repeatedly "urged the district courts to exercise great care in making a § 1292(b) certification." *Westwood Pharmaceuticals, Inc. v. National Fuel Gas Dist. Corp.,* 964 F.2d 85, 89 (2d Cir.1992). Certification of a permissive interlocutory appeal is limited to "extraordinary cases where appellate review might avoid protracted and expensive litigation", *see German,* 896 F.Supp. at 1398, and is not intended as a vehicle to provide early review of difficult rulings in hard cases. *Id.; Abortion Rights Mobilization, Inc. v. Regan,* 552 F.Supp. 364, 366 (S.D.N.Y.1982).

■ Specifically, the Second Circuit has held that challenges to the sufficiency of a pleading are not generally the appropriate subjects of interlocutory review, as "a reversal [on interlocutory appeal] at most could lead only to a remand for repleading, with possibilities of further interlocutory appeals thereafter." *Gottesman v. General Motors Corp.,* 268 F.2d 194, 196 (2d Cir.1959) (explaining further that "[i]t would seem axiomatic that appeals challenging pre-trial rulings upholding pleadings against demurrer could not be effective in bringing nearer the termination of litigation; on the contrary, they only stimulate the parties to more and greater pre-trial sparring apart from the merits.")

---

8. 28 U.S.C. § 1292(b) provides in relevant part:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from an order may materially advance the ultimate termination of the litigation, he shall state in writing in such order.

*See also Degulis v. LXR Biotechnology, Inc.*, 1997 WL 20832 *3 (S.D.N.Y. Jan. 21, 1997)(citing Wright, Miller, & Cooper, Federal Practice and Procedure, Jurisdiction 2d § 3931 at 458–49 (1996) and noting that while " 'decisions on the pleadings may be appropriate for interlocutory review when they present difficult questions of substantive law, rather than the technical sufficiency of the pleadings' ... [a]s a general matter, rulings on the sufficiency of the pleadings are not appropriate for interlocutory review").

## II. The Order of the Bankruptcy Court Will Not Be Certified

■ Applying the standard for certification set forth in § 1292(b), Bear Stearns contends that the following question is the appropriate subject for interlocutory appeal:

> Did the Bankruptcy Court err in applying a presumption that all transfers made by a debtor operating a Ponzi scheme, where the debtor has pled guilty or been convicted of a crime, are made with actual fraudulent intent within the meaning of 11 U.S.C. § 548(a)(1)(A), even where such transfers do not represent payments to the Ponzi scheme investors?

*See* Bear Stearns' Mem. of Law at 9. Indeed, Bear Stearns maintains that this question: (1) involves a controlling question of law; (2) that this issue involves a substantial ground for difference of opinion; and (3) that an intermediate appeal would materially advance the ultimate termination of the litigation. *Id.* at 10. Because we are not convinced that Bear Stearns has demonstrated the existence of a controlling issue of law, we decline to grant interlocutory review of this question.

In arguing that the Bankruptcy Court's Order involves a controlling issue of law, Bear Stearns maintains that "[w]ithout the Ponzi scheme presumption, the Trustee is left only with the wholly conclusory allegation that all of the margin payments 'were made with actual intent to hinder, delay, and defraud the Fund's creditors' " and that "[s]uch boilerplate allegations, without particularity as to how the specific transfers were fraudulent, [would] not satisfy Fed.R.Civ.P. 9(b)." Bear Stearns' Mem. of Law at 11. Thus, Bear Stearns contends that if this Court were to reverse the Order of the Bankruptcy Court on interlocutory appeal, there would be nothing left to the Trustee's allegations, resulting in the termination of this litigation. *See Id.* at 12 ("With that presumption gone, this case is over.") We disagree.

Contrary to Bear Stearns' suggestion that an interlocutory order by this Court reversing the Bankruptcy Court's decision would result in the termination of this litigation, such an interlocutory order would, instead, likely result in "a remand for repleading with possibilities of further interlocutory appeals after that." *Gottesman*, 268 F.2d at 195. Indeed, even if this court were to find on interlocutory appeal that the Bankruptcy Court improperly applied the Ponzi scheme presumption to the facts of this case, there is no evidence to suggest that the Trustee could not and would not replead so as to cure this "deficiency" by alleging specific instances of "actual intent" to defraud on the part of Mr. Berger.[9] Thus, Bear Stearns has

---

9. While we need not decide the question of whether the Trustee could in fact sufficiently allege that Mr. Berger had the "actual intent" to defraud his creditors in the absence of a so-called Ponzi scheme presumption, we note that this possibility clearly exists. We do not find that the current allegations in the Complaint, namely that Mr. Berger's purpose in making margin payments was to continue his short-selling, would be inconsistent with an Amended Complaint alleging that the transfers at issue were in fact made with the "actu-

failed to show that granting leave for interlocutory appeal would materially advance the ultimate termination of this litigation as opposed to further prolonging it. For this reason, we agree with the Trustee that "Bear Stearns' motion presents 'precisely the sort of situation which *Gottesman* instructs district courts to refrain from certifying an interlocutory appeal.'" Trustee's Mem. of Law at 16–17 (citing *Degulis*, 1997 WL 20832 at *5).[10]

 Finally, we reject Bear Stearns' suggestion that merely because "Ponzi schemes have been around for nearly a century and, unfortunately, are not likely to disappear any time soon", *see* Bear Stearns' Mem, of Law at 13, this issue constitutes a "controlling issue" of law which should be decided on interlocutory appeal. While we acknowledge that the question of whether a particular issue has precedential value for a large number of cases is a factor to be considered in deciding whether a controlling question of law deserving of interlocutory review exists, *see In re Lloyds*, 1997 WL 458739 at *4 (S.D.N.Y. Aug. 12, 1997), we are not persuaded that this is the type of rare situation which demands our immediate review.[11] We agree with the Trustee that Bear Stearns' argument is analogous to the one rejected by the Court in *Primavera Familienstifung v. Askin*, 139 F.Supp.2d 567, 573 (S.D.N.Y.2001). In that case, the defendant, in seeking certifi-

cation for an interlocutory appeal argued that the Court "took a radically expansive view of shareholder liability... present[ing] critical issues of New York public policy that affect the entire securities industry." Despite this argument, the Court rejected defendant's request for certification, explaining that "[e]ven assuming *arguendo* that [defendant's] dramatic characterization of this Court's ruling were correct, it is rather speculative to say that this ruling has precedential value for a large number of cases when those cases have yet to be brought." *Id.* at 573. As we find no specific basis to suggest that our immediate review of this issue would provide precedential value for an especially large number of cases, we do not find that interlocutory review of the Bankruptcy Court order is warranted on this ground.

## CONCLUSION

For the reasons stated above, Bear Stearns' request for leave to appeal the interlocutory ruling of the Bankruptcy Court is denied.[12]

**IT IS SO ORDERED.**

al intent" to delay, hinder or defraud Mr. Berger's creditors.

10. Bear Stearns' argument that interlocutory review is appropriate because the course of discovery will be affected by whether or not a Ponzi scheme presumption is applied is less than clear. *See* Bear Stearns' Mem. at 12. We are unpersuaded that a Ponzi scheme presumption, or lack thereof, will have any impact on discovery in this case.

11. While there are several interesting questions about the Ponzi scheme presumption

which have not been fully addressed in the cases, it is not at all clear that they will necessarily be resolved in this case.

12. Because we do not find either a controlling issue of law or an exceptional question of public policy which demands our interlocutory review, we need not address Bear Stearns' additional argument that there exists "substantial grounds for disagreement as to the Bankruptcy Court's ... presumption." *See* Bear Stearns' Mem. of Law at 14. We note that in denying Bear Stearns' motion for

leave to appeal at this time, we take no position on whether the Trustee should, in fact, prevail on the merits of Claims I and IV and, if so, whether Bear Stearns' may have a meritorious argument if it in fact chooses to appeal from the final judgment of the Bankruptcy Court.